Tanya L. Forsheit, Bar No. 192472
Email: tforsheit@bakerlaw.com
Daniel Goldberg, Bar No. 280718
Email: dgoldberg@bakerlaw.com
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone: 310.820.8800
Facsimile: 310.820.8859

Attorneys for Defendant
MEDVERSANT TECHNOLOGIES,
L.L.C., incorrectly named as
MEDVERSANT TECHOLOGIES, L.L.C.,
a California limited liability company

[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| EDWARD SIMON, DC, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>     vs.<br><br>HEALTHWAYS, INC., a Delaware corporation; HEALTHWAYS WHOLEHEALTH NETWORKS, INC., a Delaware corporation; MEDVERSANT TECHNOLOGIES, L.L.C., a California limited liability company; and DOES 1 through 1,000, inclusive,<br><br>          Defendants. | CASE NO. 2:14-cv-08022-BRO-JC<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' JOINT MOTION TO STAY ACTION**<br><br>**Date: April 13, 2015**<br>**Time: 1:30 pm**<br>**Courtroom: 14**<br><br>[Hon. Beverly Reid O'Connell]<br><br>State Action Filed: September 16, 2014<br>Removed: October 16, 2014<br>Trial: February 23, 2016 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that in connection with Defendants' Motion to Stay the instant action in its entirety, Defendants Healthways, Inc. ("Healthways"), Healthways Wholehealth Networks, Inc. ("WholeHealth Networks"), and Medversant Technologies, L.L.C. (collectively, "Defendants") hereby request that the Court take judicial notice, pursuant to Rule 201(b)(2) of the Federal Rules of Evidence, of the attached documents which are not subject to reasonable dispute specified below:

1.   *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 61 Communications Reg. (P&F) 671, ¶ 1 (FCC Oct. 30, 2014) ("*Fax Order*"), a true, correct and complete copy of which is attached to this Request as Exhibit A.

2.   *In the Matter of Medversant Technologies, LLC for Retroactive Waiver of 47. CFR. § 64.1200(a)(4)(iv),* CG Docket No. 02-278, 05-338, Petition for Waiver (FCC, filed January 8, 2015) ("Petition"), a true, correct and complete copy of which is attached to this Request as Exhibit B.

///
///
///
///
///
///
///
///
///
///
///
///

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO STAY

**Grounds for Judicial Notice**

Judicial notice is proper pursuant to Rule 201(b)(2) of the Federal Rules of Evidence because the Fax Order and Petition can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

DATED: March 3, 2015              Jenner & Block LLP

                                  By:  s/ Kenneth K. Lee
                                  _____
                                       Kenneth K. Lee
                                       Attorneys for Defendants
                                       Healthways, Inc. and Healthways
                                       WholeHealth Networks, Inc.

DATED: March 3, 2015              Baker & Hostetler LLP

                                  By:  s/ Tanya L. Forsheit
                                  _____
                                       Tanya L. Forsheit
                                       Attorneys for Defendant Medversant
                                       Technologies, L.L.C.

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO STAY

**<u>Exhibit A</u>**

Federal Communications Commission                            FCC 14-164

Before the
**Federal Communications Commission**
**Washington, D.C. 20554**

| | | |
|---|---|---|
| In the Matter of | **)** | |
| | **)** | |
| Rules and Regulations Implementing the | **)** | CG Docket No. 02-278 |
| Telephone Consumer Protection Act of 1991 | **)** | |
| | **)** | |
| Junk Fax Prevention Act of 2005 | **)** | CG Docket No. 05-338 |
| | **)** | |
| Application for Review filed by Anda, Inc. | **)** | |
| | **)** | |
| Petitions for Declaratory Ruling, Waiver, and/or | **)** | |
| Rulemaking Regarding the Commission's Opt-Out | **)** | |
| Requirement for Faxes Sent with the Recipient's | **)** | |
| Prior Express Permission | **)** | |

**ORDER**

**Adopted:  October 15, 2014**                    **Released:  October 30, 2014**

By the Commission: Commissioners Pai and O'Rielly concurring in part, dissenting in part and issuing separate statements.

## I.    INTRODUCTION

1.      In this Order, we confirm senders of fax ads must include certain information on the fax that will allow consumers to opt out, even if they previously agreed to receive fax ads from such senders.[1] At the same time, we recognize that some parties who have sent fax ads with the recipient's prior express permission may have reasonably been uncertain about whether our requirement for opt-out notices applied to them.  As such, we grant retroactive waivers of our opt-out requirement to certain fax advertisement senders to provide these parties with temporary relief from any past obligation to provide the opt-out notice to such recipients required by our rules.

2.      In addition, we provide a six-month window for these waiver recipients to come into compliance with the opt-out requirement, and we direct the Consumer and Governmental Affairs Bureau (Bureau) to conduct outreach to inform senders of the opt-out notice requirement.   After this six-month window, we emphasize that all waiver recipients must include the opt-out notice in the precise manner required by our rules.[2]  Other, similarly situated parties may also seek waivers such as those granted in this Order.  But in light of our confirmation here that a fax ad sent with the recipient's prior express permission must include an opt-out notice, we expect that parties will make every effort to file within six months of the release of this Order.

---

[1] *See* 47 C.F.R § 64.1200(a)(4)(iv).

[2] This waiver does not extend to a similar requirement to include an opt-out notice on fax ads sent pursuant to an established business relationship, as there is no confusion regarding the applicability of this requirement to such faxes.  *See* 47 C.F.R. § 64.1200(a)(4)(iii).  We also note that this waiver does not affect the prohibition against sending unsolicited fax ads, which has remained in effect since its original effective date.  *See* 47 C.F.R. § 64.1200(a)(4).

3.      We also deny an Application for Review[3] and several related requests for declaratory ruling[4] insofar as they seek a ruling that the Commission lacked the statutory authority to require opt-out information on fax ads sent with a consumer's prior express permission, or, alternatively, that section

---

[3] *See Junk Fax Prevention Act of 2005, Petition for Declaratory Ruling to Clarify That 47 U.S.C. § 227(b) Was Not the Statutory Basis for Commission's Rules Requiring an Opt-Out Notice for Fax Advertisements Sent with Recipient's Prior Express Consent*, CG Docket No. 05-338, Application for Review filed by Anda, Inc. on May 14, 2012 (Application for Review).

[4] *See Petition of Forest Pharmaceuticals, Inc., for Declaratory Ruling and/or Waiver Regarding Substantial Compliance with Section 64.1200(a)(4)(iii) of the Commission's Rules and for Declaratory Ruling Regarding the Statutory Basis for the Commission's Opt-Out Notice Rule with Respect to Faxes Sent with the Recipient's Prior Express Invitation or Permission*, CG Docket No. 05-338 (filed June 27, 2013) (Forest Petition); *Petition of Staples, Inc. and Quill Corporation for a Rulemaking to Repeal Rule 64.1200(a)(3)(iv) and for a Declaratory Ruling to Interpret Rule 64.1200(a)(3)(iv)*, CG Docket Nos. 02-278, 05-338 (filed July 19, 2013) (Staples Petition); *Petition for Declaratory Ruling and/or Waiver of Gilead Sciences, Inc., and Gilead Palo Alto, Inc., Regarding Substantial Compliance with Section 64.1200(a)(4)(iii) of the Commission's Rules and for Declaratory Ruling Regarding the Statutory Basis for the Commission's Opt-Out Notice Rule with Respect to Faxes Sent with the Recipient's Prior Express Invitation or Permission*, CG Docket Nos. 02-278, 05-338 (filed Aug. 9, 2013) (Gilead Petition); *Petition of Douglas Paul Walburg and Richie Enterprises, LLC, for Declaratory Ruling to Clarify Scope and/or Statutory Basis for Rule 64.1200(a)(3)(iv) and/or for Waiver*, CG Docket Nos. 02-278, 05-338 (filed Aug. 19, 2013) (Walburg Petition); *Petition of Futuredontics, Inc. for Declaratory Ruling to Clarify Scope and/or Statutory Basis for Rule 64.1200(a)(3)(iv) and/or for Waiver*, CG Docket Nos. 02-278, 05-338 (filed Oct. 18, 2013) (Futuredontics Petition); *Petition of All Granite & Marble Corp. for Declaratory Ruling to Clarify Scope and/or Statutory Basis for Rule 64.1200(a)(3)(iv) and/or for Waiver*, CG Docket Nos. 02-278, 05-338 (filed Oct. 28, 2013) (All Granite Petition); *Purdue Pharma Petition for Declaratory Ruling Regarding the Statutory Basis for the Commission's Opt-Out Notice Rule with Respect to Solicited Faxes ,and/or Regarding Substantial Compliance with Section 64.1200(a)(4)(iii) and (iv) of the Commission's Rules*, CG Docket Nos. 02-278, 05-338 (filed Dec. 12, 2013) (Purdue Pharma Petition); *Petition of Prime Health Services, Inc. for Declaratory Ruling to Clarify Scope and/or Statutory Basis for Rule 64.1200(a)(3)(iv) and/or for Waiver*, CG Docket Nos. 02-278, 05-338 (filed Dec. 17, 2013) (Prime Health Petition); *Petition of TechHealth, Inc. for Declaratory Ruling to Clarify Scope and/or Statutory Basis for Rule 64.1200(a)(3)(iv) and/or for Waiver*, CG Docket Nos. 02-278, 05-338 (filed Jan. 6, 2014) (TechHealth Petition); *Petition of Crown Mortgage Company for Declaratory Rulings and/or Waiver of the "Opt Out" Requirement*, CG Docket Nos. 02-278, 05-338 (filed Feb. 21, 2014) (Crown Petition); *Petition of Magna Chek, Inc. for Declaratory Ruling and/or Waiver*, CG Docket Nos. 02-278, 05-338  (filed March 28, 2014) (Magna Petition); *Petition for Declaratory Ruling and/or Waiver of Masimo Corp.*, CG Docket Nos. 02-278, 05-338 (filed April 1, 2014) (Masimo Petition); *Petition of Best Buy Builders, Inc. for Declaratory Ruling and/or Waiver*, CG Docket No. 05-338 (filed April 7, 2014) (Best Buy Petition); *Petition of S&S Firestone, Inc., d/b/a S&S Tire for Declaratory Ruling and/or Waiver*, CG Docket Nos. 02-278, 05-338 (filed May 7, 2014) (S&S Petition); *Petition of Cannon & Associates LLC D/B/A Polaris Group for Declaratory Ruling and/ or Waiver*, CG Docket Nos. 02-278, 05-338 (filed May 15, 2014) (Cannon Petition); *Petition of Stericycle, Inc., for Declaratory Ruling and/or Waiver Regarding 47 C.F.R. § 64.1200(a)(4)(iv)*, CG Docket Nos. 02-278, 05-338 (dated June 6, 2014) (Stericycle Petition); *Petition of American CareSource Holdings, Inc. for Declaratory Ruling to Clarify the Scope and/or Statutory Basis for Rule 64.1200(a)(4)(iv) and/or for Waiver*, CG Docket Nos. 02-278, 05-338 (filed July 1, 2014) (American Petition); *Petition of CARFAX, Inc. for Declaratory Ruling and/or Waiver of Section 64.1200(a)(4)(iv) of the Commission's Rules*, CG Docket Nos. 02-278, 05-338 (filed July 11, 2014) (CARFAX Petition); *Petition of Merck and Company, Inc. for Declaratory Ruling and/or Waiver*, CG Docket Nos. 02-278, 05-338 (filed July 11, 2014) (Merck Petition); *Petition of UnitedHealth Group, Inc. for Declaratory Ruling and/or Waiver*, CG Docket Nos. 02-278, 05-338 (filed July 11, 2014) (UnitedHealth Petition); *Petition of MedLearning, Inc. and Medica, Inc. for Declaratory Ruling and/or Waiver*, CG Docket Nos. 02-278, 05-338 (filed July 16, 2014) (Medica Petition); *Petition of Unique Vacations, Inc., for Declaratory Ruling and/or Waiver* CG Docket Nos. 02-278, 05-338 (filed Aug. 20, 2014) (Unique Petition); *Petition of Power Liens, LLC for Declaratory Ruling and/or Wavier of Section 64.1200(a)(4)(iv) of the Commission's Rules*, CG Docket Nos. 02-278, 05-338 (filed Sept. 18, 2014) (Power Liens Petition) (collectively "Petitions"); *see also* 47 C.F.R. § 64.1200(a)(4)(iv).  As discussed in greater detail below, other, similarly situated parties may also seek waivers such as those granted in this Order.

Federal Communications Commission                                    FCC 14-164

227(b) of the Communications Act of 1934, as amended (the Act), was not the statutory basis of that requirement.[5]

## II.      BACKGROUND

### A.      Telephone Consumer Protection Act

4.       In 1991, Congress enacted the Telephone Consumer Protection Act (TCPA) to address the growing number of telephone marketing calls and certain calling practices thought to be an invasion of consumer privacy.[6]  In relevant part, the TCPA prohibits the use of any telephone facsimile (fax) machine, computer, or other device to send an "unsolicited advertisement" to a telephone fax machine.[7] In 1992, the Commission adopted rules implementing the TCPA, including restrictions on the transmission of unsolicited fax ads by fax machines.[8]

5.       In 2005, Congress enacted the Junk Fax Prevention Act, which amended the fax advertising provisions of the TCPA.[9]  In general, the Junk Fax Prevention Act:  (1) codified an established business relationship (EBR) exemption to the prohibition on sending unsolicited fax ads;[10] (2) provided a definition of an EBR to be used in the context of unsolicited fax ads;[11] (3) required the sender of an unsolicited fax advertisement to provide specified notice and contact information on the fax that allows recipients to "opt out" of any future fax transmissions from the sender;[12] and (4) specified the circumstances under which a request to "opt out" complies with the Act.[13]  In 2006, the Commission adopted the *Junk Fax Order* amending the rules concerning fax transmissions as required by the Junk Fax Prevention Act and addressing certain issues raised in petitions for reconsideration concerning the Commission's fax advertising rules.[14]  As part of that Order, the Commission adopted a rule that required that a fax advertisement "sent to a recipient that has provided prior express invitation or permission to the sender must include an opt-out notice."[15]  A summary of the *Junk Fax Order* was published in the Federal Register on May 3, 2006.[16]

---

[5] In so doing, we affirm the Consumer and Governmental Affairs Bureau's (Bureau) prior order.  *See Junk Fax Prevention Act of 2005, Petition for Declaratory Ruling to Clarify That 47 U.S.C. § 227(b) Was Not the Statutory Basis for Commission's Rules Requiring an Opt-Out Notice for Fax Advertisements Sent with Recipient's Prior Express Consent,* CG Docket No. 05-338, Order, 27 FCC Rcd 4912 (CGB 2012) (*Anda Order*).

[6] The TCPA is codified as section 227 of the Act, 47 U.S.C. § 227.

[7]  47 U.S.C. § 227(b)(1)(C).  As the legislative history explained, because fax machines "are designed to accept, process, and print all messages which arrive over their dedicated lines," fax advertising imposes burdens on unwilling recipients that are distinct from the burdens imposed by other types of advertising.  *See* H.R. Rep. No. 317, 102d Cong., 1st Sess. 11 (1991).

[8]  *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CC Docket No. 92-90, Report and Order, 7 FCC Rcd 8752 (1992) (*1992 TCPA Order*); *see also* 47 C.F.R. § 64.1200(a)(4).

[9] *See* Junk Fax Prevention Act of 2005, Pub. L. No. 109-21, 119 Stat. 359 (2005) (Junk Fax Prevention Act).

[10] *Id.* sec. 2(a).

[11] *Id.* sec. 2(b).

[12] *Id.* sec. 2(c).

[13] *Id.* sec. 2(d).

[14] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Junk Fax Prevention Act of 2005,* CG Docket Nos. 02-278, 05-338, Report and Order and Third Order on Reconsideration, 21 FCC Rcd 3787 (2006) (*Junk Fax Order*).

[15] 47 C.F.R. § 64.1200(a)(4)(iv); *see also Junk Fax Order,* 21 FCC Rcd at 3812, para. 48.

[16] 71 FR 25967 (May 3, 2006).

Federal Communications Commission                    FCC 14-164

**B.      Anda Proceeding**

6.      _Petition for Declaratory Ruling_.  In 2010, Anda, Inc. (Anda) filed a request for declaratory ruling on the opt-out rule as applied to fax ads sent to recipients that had provided prior express permission.[17]  Specifically, Anda sought a ruling that:  (1) the Commission lacked any authority to adopt a rule requiring an opt-out notice on fax ads sent with the recipient's express prior consent; or (2) in the alternative, section 227(b) of the Act is not the statutory basis for the rule.[18]  In particular, Anda contended that section 227 authorizes the Commission to adopt restrictions only with respect to unsolicited fax ads, which are defined to exclude any fax advertisement sent with the recipient's prior express invitation or permission.[19]  Anda requested this clarification because section 227(b)(3) creates a private right of action that permits suits in state courts based on a violation of section 227(b) or the regulations prescribed under that subsection.[20]  Anda represents that it is subject to such a lawsuit in which a class of plaintiffs seeks monetary damages under section 227(b) for alleged violations of the opt-out notice requirement for faxes allegedly sent at the recipient.[21]

7.      In 2012, the Bureau dismissed Anda's petition.[22]  In so doing, the Bureau concluded that Anda had identified no controversy to terminate or uncertainty to remove, a condition precedent to the Commission issuing a declaratory ruling.[23]  Specifically, the Bureau responded that the Commission had cited in the _Junk Fax Order_ statutory authority, including section 227, to adopt the rule at issue.[24]  The Bureau also found that the Commission had clearly set forth the rule's requirement.[25]  The Bureau thus found no controversy to terminate or uncertainty to remove.

8.      The Bureau also concluded that, to the extent Anda challenged the Commission's authority to adopt the rule itself, it was an improper collateral challenge to the rule that should have been presented in a timely petition for reconsideration and was time-barred under the Act and the Commission's procedural rules.[26]  While the Bureau dismissed Anda's petition on procedural grounds, the Bureau in dicta found unpersuasive Anda's argument that the TCPA could not have given the Commission authority to adopt the rule.[27]  Specifically, the Bureau noted that the opt-out requirement was tied directly to the TCPA's purpose in ensuring that consumers have the necessary information to opt out of future unwanted fax ads, and in ensuring that the fax sender can account for all such requests and process them in a timely manner by making certain the recipient uses the contact information specified by the sender in the opt-out notice.[28]

---

[17] Anda was established in 1992:  http://www.linkedin.com/company/anda-inc.

[18] _See generally_ Anda Petition for Declaratory Ruling.

[19] _See, e.g._, _id._ at 3-4.

[20] _Id._ at 13.

[21] _Id._ at 13-14.

[22] _See generally Anda Order_.

[23] _Id._ at 4912, para 1.

[24] _Id._ at 4914, para. 5.

[25] _Id._

[26] _Id._ at 4914,  para. 6.

[27] _Id._ at 4915, para. 7.

[28] _Id._  On February 24, 2012, the Commission filed an _Amicus_ Brief in the case of _Nack v. Walburg_ in the United States Court of Appeals for Eighth Circuit addressing a similar issue:  http://hraunfoss.fcc.gov/edocs_public/attachmatch/DOC-312766A1.pdf (FCC _Amicus_ Brief).  The analysis in that brief illustrates how the rule at issue advances the legislative purposes of the TCPA by protecting consumers from the costs and burdens associated with receiving fax advertisements.  On May 21, 2013, the U.S. Court of Appeals

(continued....)

4

9.      *Application for Review*.  On May 14, 2012, Anda filed an Application for Review of the Bureau Order dismissing its Petition for Declaratory Ruling.  Specifically, Anda contends that the Bureau erred in determining that there is no uncertainty to remove and that the Commission should clarify that the opt-out notice requirement for faxes sent with prior express permission was not adopted pursuant to section 227(b) of the Act.[29]  In so doing, Anda reiterates arguments made in the petition for declaratory ruling.  First, Anda argues that the courts are unclear as to which statutory authority the Commission relied upon in adopting the opt-out requirement for fax ads because the Commission cited multiple authorities in the *Junk Fax Order* without specifying which formed the legal basis for this requirement.[30]  Second, Anda contends that section 227 contains no express language authorizing the Commission to adopt rules regarding faxes sent with the recipient's prior express permission.[31]  In this regard, Anda takes issue with the Bureau's conclusion that because Congress did not define how "prior express invitation or permission" can be obtained from, and revoked by, a consumer, the Commission has authority to fill gaps where the statute is silent on specific terms.[32]

## C.      Petitions for Declaratory Ruling, Waiver and/or Rulemaking

10.      Since the filing of Anda's Application for Review, multiple petitions have been filed seeking various forms of relief from the Commission's rule requiring that an opt-out notice be included on fax ads sent with the prior express invitation or permission of the recipient.  In general, these petitioners contend there is controversy and uncertainty over the scope of and statutory basis for section 64.1200(a)(4)(iv) of the Commission's rules.[33]  The petitioners seek a declaratory ruling to clarify that section 64.1200(a)(4)(iv) was not promulgated under section 227 of the Act.[34]  The petitioners argue that section 227(b) of the Act applies only to "unsolicited" ads and that the Commission did not have the authority to require the opt-out notification on faxes sent with the prior permission of the recipient.[35]  As a result, these petitioners suggest that clarification is necessary to determine whether the rule is meant to require opt-out notices on faxes sent with the prior express permission of the recipient and, if so, the statutory basis for that rule.[36]  Several petitioners contend that the Commission offered confusing and conflicting statements regarding the applicability of the rule to solicited faxes.[37]  In addition, several petitions seek a declaratory ruling that a fax advertisement that "complies substantially" with section

---

(Continued from previous page)

for the Eighth Circuit agreed with the FCC's *Nack* amicus brief that the regulation at issue, by its plain language, required an opt-out notice on a fax advertisements sent with the recipient's express consent.  In addition, the Court held that the Hobbs Act, which establishes procedures for judicial review of FCC orders by means of direct review in the court of appeals, provides exclusive process by which to challenge an FCC regulation.  *See Nack v. Walburg*, 715 F.3d 680 (8th Cir. 2013) *cert. denied*, 134 S.Ct. 1539 (2014).

[29] *See* Application for Review at 10-13.

[30] *Id.*

[31] *Id.* at 13-17.

[32] *Id.* at 15-16.

[33] *See, e.g.,* All Granite Petition at 6-10; Forest Petition at 12-17; Futuredontics Petition at 6-10; Gilead Petition at 12-17; Magna Petition at 5-8; Masimo Petition at 6; Staples Petition at 17-20; Walburg Petition at 7-13.

[34] *Id.*

[35] *Id.*

[36] *See, e.g.*, Staples Petition at 17; Walburg Petition at 7-9.

[37] *See, e.g.,* All Granite Petition at 4; American Petition at 8; Best Buy Petition at 4; CARFAX Petition at 6-8; Futuredontics Petition at 4; Gilead Petition at 13; Medica Petition at 6-9; Merck Petition at 5-9; Staples Petition at 5 (contending that a footnote in the *Junk Fax Order* suggests that the opt-out requirement applies only to unsolicited ads); UnitedHealth Petition at 5-7.

64.1200(a)(4)(iv) of the Commission's rules does not violate any regulation promulgated under the Act, even if the opt-out notice does not conform to the specific requirements of that rule.[38]

11.      All Granite, American, Best Buy, Cannon, CARFAX, Crown Mortgage, Forest, Futuredontics, Gilead, Magna, Masimo, Medica, Merck, Power Liens, Purdue Pharma, Prime Health, S&S, Stericycle, TechHealth, Unique Vacations, UnitedHealth and Walburg seek retroactive waivers of the rule.[39]  Forest and Gilead state that a waiver "would serve the public interest by avoiding an abuse of the private right of action created by the TCPA."[40]  Walburg states that a waiver is justified because strict compliance with respect to solicited faxes would be "inequitable, unduly burdensome, and contrary to the public interest."[41]  Purdue Pharma seeks a "limited waiver" for faxes "sent pursuant to the recipients' prior express invitation or permission . . . each of which included a demonstrably effective opt-out notice on the first page describing cost-free opt-out mechanisms."[42]  Prime Health maintains that "[w]here, as here, recipients of fax advertisements explicitly agreed to receive them, had the means and ability to revoke their consent at any time, and never expressed any interest or desire to do so, requiring strict compliance with Section 64.1200(a)(3)(iv) would be both tremendously burdensome and inequitable."[43]  TechHealth similarly states that it "sent fax advertisements to business partners that had consented to receiving communications from TechHealth" and that "those recipients knew how to reach TechHealth and could have easily requested that TechHealth stop sending faxes. . . . Under such circumstances, the goal of allowing consumers to stop unwanted faxes would not have been furthered by including opt-out notices on the faxes . . . ."[44]

12.      Finally, Staples requests that the Commission initiate a rulemaking to repeal section 64.1200(a)(4)(iv), arguing that it reflects "poor policy that unfairly threatens companies and individuals with massive liability for the transmission of solicited fax ads" and "plainly exceeds the agency's statutory authority."[45]  In addition, several petitioners argue that application of this requirement violates the First Amendment to the extent that it requires solicited faxes to contain an opt-out notice.[46]

---

[38] *See, e.g.,* Cannon Petition at 9-11; Forest Petition at 1, 10; Gilead Petition at 1, 9; Magna Petition at 8-9; Masimo Petition at 8-10; Purdue Pharma Petition at 13-17.  For example, Forest notes that although it informed recipients that they could opt out of future fax transmissions and specified a telephone number for doing so, a claim has been made that its faxes did not specify that opt-out requests must be honored within 30 days as required by Commission rules.  *See* Forest Petition at 9.

[39] *See* All Granite Petition at 10; American Petition at 8; Best Buy Petition at 11-12; Cannon Petition at 12-13; CARFAX Petition at 11-12; Crown Petition at 17-20; Forest Petition at 11; Futuredontics Petition at 13-14; Gilead Petition at 11; Magna Petition at 9-12; Masimo Petition at 10-12; Medica Petition at 13; Merck Petition at 16-17; Walburg Petition at 13-15; Power Liens Petition at 13-15; Purdue Pharma Petition at 17-19; Prime Health Petition at 13-15; S&S Petition at 10-11; Stericycle Petition at 15; TechHealth Petition at 15-16; Unique Petition at 9-11; UnitedHealth Petition at 9.

[40] *See* Forest Petition at 11; Gilead Petition at 11.

[41] Walburg Petition at 14.

[42] Purdue Pharma Petition at 18.

[43] Prime Health Petition at 14-15.

[44] TechHealth Petition at 16.

[45] Staples Petition at 7-10.  In addition, the Staples Petition includes a discussion as to why it believes litigants in a civil action can challenge the substantive validity of the Commission rules as a defense to a TCPA lawsuit.  This discussion, however, does not request any specific Commission action.  *Id.* at 20-26.

[46] *See, e.g.,* All Granite Petition at 8; Best Buy Petition at 9; Cannon Petition at 8; Staples Petition at 11-15.

13.     The Commission sought comment on the issues raised in these petitions.[47]  Some individual consumers and consumer organizations filed comments supporting the Commission's opt-out requirements, noting the importance of having a means to stop the sending of fax ads.[48]  One commenter argues that Congress provided the Commission with authority in section 227(b)(2)(E) to promulgate opt-out requirements through the use of the phrase "*future* unsolicited fax advertisements" to indicate that Congress was contemplating situations in which, in the past, a recipient may have consented to receiving a fax, but later decides not to continue to consent.[49]  Other commenters support the requests for declaratory ruling.[50]  In general, these parties reiterate arguments made in the Petitions.  For example, these commenters challenge the Commission's statutory authority to adopt section 64.1200(a)(4)(iv) and suggest that section 227 of the Act was not the statutory basis of that rule.[51]  These parties also support the granting of a blanket retroactive waiver of this rule for any prior conduct, noting confusion created in the Order adopting this requirement and the liability that several parties face in private rights of action.[52]

## III.    DISCUSSION

14.     As discussed in greater detail below, we deny Anda's application for review and several related requests for declaratory ruling to the extent that they seek a ruling that the Commission lacked the statutory authority to require opt-out information on fax ads sent with a consumer's prior express permission, or, alternatively, that section 227(b) of the Act was not the statutory basis of that requirement.  In so doing, we uphold the Bureau's prior conclusion that there was no controversy to terminate or

---

[47] *See Consumer and Governmental Affairs Bureau Seeks Comment on Petitions Concerning the Commission's Rule on Opt-Out Notices on Fax Advertisements*, CG Docket Nos. 02-278, 05-338, Public Notice, DA 14-120 (rel. Jan. 31, 2014); *Consumer and Governmental Affairs Bureau Seeks Comment on Crown Mortgage Company Petition Concerning the Commission's Rule on Opt-Out Notices on Fax Advertisements*, CG Docket Nos 02-278, 05-338, Public Notice, DA 14-416 (rel. March 28, 2014); *Consumer and Governmental Affairs Bureau Seeks Comment on Petitions Concerning the Commission's Rule on Opt-Out Notices on Fax Advertisements*, CG Docket Nos. 02-278, 05-338, Public Notice, DA 14-556 (rel. Apr. 25, 2014); *Consumer and Governmental Affairs Bureau Seeks Comment on Petitions Concerning the Commission's Rule on Opt-Out Notices of Fax Advertisements*, CG Docket Nos. 02-278, 05-338, Public Notice, DA 14-734 (rel. May 30, 2014); *Consumer and Governmental Affairs Bureau Seeks Comment on Petition Concerning the Commission's Rule on Opt-Out Notices on Fax Advertisements*, CG Docket Nos. 02-278, 05-338, Public Notice, DA 14-923 (rel. June 27, 2014); *Consumer and Governmental Affairs Bureau Seeks Comment on Petitions Concerning the Commission's Rules on Opt-Out Notices on Fax Advertisements*, CG Docket Nos. 02-278, 05-338, Public Notice, DA 14-1057 (rel. July 25, 2014); *Consumer and Governmental Affairs Bureau Seeks Comment on Petition  Concerning the Commission's Rules on Opt-Out Notices on Fax Advertisements*, CG Docket Nos. 02-278, 05-338, Public Notice, DA 14-1259 (rel. Aug. 29, 2014); *Consumer and Governmental Affairs Bureau Seeks Comment on Petition Concerning the Commission's Rules on Opt-Out Notices on Fax Advertisements*, CG Docket Nos. 02-278, 05-338, Public Notice, DA 14-1398 (rel. Sept. 26, 2014).  A list of commenters can be found in the Appendix.

[48] *See, e.g.*, Sandra Guerrero Comments ("The 'opt-out' is necessary"); Michael Meister Comments; Jessica Ramirez-Pagen Comments ("If opt outs get removed you are taking away a law that is supposed to protect the public"); Lauren Serrano Comments ("There has to be a way to tell a business you don't want their junk advertising"); *see also* Bellin & Associates Comments; National Association of Consumer Advocates (NACA) Comments at 1 ("Section 64.1200(a)(4)(iv) is both within the FCC's authority to prescribe regulations and a proper and desirable exercise of that authority, and should be applied to faxes sent pursuant to any alleged consent or invitation").

[49] *See* Bellin & Associates Comments at 5.  Also noting that section 227(b)(2) grants the Commission authority "to prescribe regulations to implement the requirements of [the TCPA's fax advertising provisions]").

[50] *See, e.g.*, Anda Comments at 4; Howmedica Osteonics Corp. Comments at 2-5; Merck & Co. Comments at 4-6; All Granite Reply Comments at 5-8.

[51] *Id*.

[52] *See, e.g.*, Anda Comments at 5-14; Merck & Co. Comments at 7-8; Staples Comments 2-8; All Granite Reply Comments at 7-8; Crown Mortgage Reply Comments at 4-8; National Association of Manufacturers Reply Comments at 4-5.

uncertainty to remove regarding to the statutory basis of the rule.[53]  We also find that the Bureau's action to otherwise dismiss the requests as improper collateral challenges time-barred by the Commission's rules was justified insofar as the requests state or suggest that there was no Commission authority for that rule or that section 227 did not provide such authority.[54]  Even if any petitioners had identified a basis to issue a declaratory ruling regarding the statutory authority to adopt the rule requiring an opt-out notice on fax ads sent with the prior express permission of the recipient, however, we conclude that section 227(b) of the Act, which provides the Commission with authority to prescribe regulations to implement the TCPA's prohibitions on junk faxes, is the statutory basis for that rule.[55]

15.     While we affirm that the Commission's rules require that an opt-out notice must be contained on all fax ads, the record indicates that a footnote contained in the *Junk Fax Order* caused confusion regarding the applicability of this requirement to faxes sent to those recipients who provided prior express permission or created a false sense of confidence that the requirement did not apply.   As a result, we find good cause exists to grant individual retroactive waivers of section 64.1200(a)(4)(iv) of the Commission's rules to the extent described below.

### A.     Application for Review and Requests for Declaratory Ruling

16.     We affirm the Bureau's finding that challenges to the Commission's authority to adopt section 64.1200(a)(4)(iv) made via a request for declaratory ruling constitute an improper collateral challenge to the rule that should have been presented in a timely petition for reconsideration and are now time-barred by the Act and the Commission's rules.  Interested parties have avenues to challenge the validity of section 64.1200(a)(4)(iv).   First, section 405(a) of the Act and section 1.429(d) of the Commission's rules allow petitions for reconsideration of a Commission rulemaking action to be filed within 30 days of the date of public notice of such action.[56]  The Commission adopted and published in the Federal Register the *Junk Fax Order* in May 2006.[57]  No petition was filed by Anda or any other party, however, challenging the Commission's authority to adopt section 64.1200(a)(4)(iv) within the time period required by the Act and the Commission's rules.

17.     Anda's challenge to the Commission's authority via a petition for declaratory ruling came over four years after Federal Register publication of the rule and is therefore time-barred.  The petitions for declaratory ruling filed in this proceeding requesting similar relief were filed approximately seven or more years after the rule was published in the Federal Register.[58]  Alternatively, at any time after the rule became effective, Anda could have petitioned the Commission to rescind the rule via a petition for rulemaking.  Moreover, Anda would have had the opportunity to request judicial review if the Commission had denied its petition for rulemaking or petition for reconsideration of the *Junk Fax Order*,[59] or to challenge the Commission's authority to adopt the rule if the Commission sought to enforce

---

[53] We note that the decision to issue a declaratory ruling to terminate controversy or remove uncertainty lies within the Commission's discretion.  *See* 5 U.S.C. § 554(e).

[54] *See Anda Order*.

[55] *See* 47 U.S.C. § 227(b).  Even some commenters who oppose the relevant petitions or requests "encourage the Commission to dispose of any relevant issues raised by Anda or other petitioners in denying the nine instant Petitions," "[d]espite the procedural defects in Anda's filings."  *See, e.g.*, Biggerstaff Reply Comments at 3.

[56] *See* 47 U.S.C. § 405(a); 47 C.F.R. § 1.429(d).

[57] *See Consumer & Governmental Affairs Bureau Announces August 1st Effective Date of Amended Facsimile Advertising Rules*, CG Docket Nos. 02-278, 05-338, Public Notice, 21 FCC Rcd 8627 (rel. July 27, 2006) (announcing approval of Office of Management and Budget and Federal Register Publication to make the amended fax rules effective as of Aug. 1, 2006) (*2006 Public Notice*).

[58] Other petitions for declaratory ruling filed in this proceeding requesting similar relief were likewise filed after the 30-day limit.

[59] *See* 47 U.S.C. § 402(a).

the rule against it.[60]  To allow Anda and other parties to challenge the validity of the rule via a request for declaratory ruling years after a rule has been promulgated would effectively circumvent the statutory channels for review of Commission rules.

18.     We also affirm the Bureau's conclusion that requests seeking a declaratory ruling that the Commission lacked the statutory authority to require opt-out information on fax ads sent with a consumer's prior express permission, or, alternatively, that section 227 of the Act, was not the statutory basis of that requirement relating to the Commission's present no controversy to terminate or uncertainty to remove.  The Commission clearly relied upon its section 227 authority in promulgating the opt-out notification requirement codified in section 64.1200(a)(4)(iv) of the Commission's rules.[61]  As the Bureau noted, the Commission in the *Junk Fax Order* expressly identified section 227 as one of the statutory bases for section 64.1200(a)(4)(iv) and the other rules promulgated in that order.[62]  The Final Regulatory Flexibility Statement accompanying the *Junk Fax Order* likewise reiterated that the Commission adopted section 64.1200(a)(4)(iv) and the other rules adopted in the *Junk Fax Order* "to comply with Congress' mandate for the Commission to issue regulations implementing the [JFPA]," *i.e.,* the section 227 amendments.[63]  And a Public Notice announcing the effective date of those rules specifically cited the Junk Fax Prevention Act as the source of the agency's authority to enact the regulations.[64]

19.     More specifically, we conclude that the Commission had authority to adopt the rule in question here.  As a threshold matter, section 227(b)(2) grants the Commission authority "to prescribe regulations to implement the requirements of [the TCPA's fax advertisement provisions]."[65]  Further, section 227(a)(5) defines an unsolicited advertisement as certain advertising material "transmitted to any person *without that person's prior express invitation or permission*."[66]  The phrase "prior express invitation or permission," however, was not defined by Congress.   As a result, in order to prescribe whether a fax ad is unsolicited under the TCPA, and thus subject to the restrictions in section 227(b)(1)(C) and the Commission's implementation rules, the Commission defined the scope of such prior express permission.[67]  Specifically, the Commission held that "express permission need only be secured once from the consumer in order to send fax advertisements to that recipient *until the consumer revokes such permission by sending an opt-out request to the sender*."[68]  As a result, under the Commission's implementation of section 227(a)(5) and 227(b)(1)(C), prior express permission remains in place only if it has not been subsequently revoked by the recipient.

20.     Necessary to the determination as to whether the sender of a fax advertisement retains the recipient's prior express permission at the time after the initial fax advertisement is sent is whether the recipient has exercised the right to opt out of future fax ads.  A means to revoke such prior express

---

[60]  *See, e.g.*, *Functional Music v. FCC*, 274 F.2d 543 (D.C. Cir. 1958).

[61]  We note that the numbering of this rule has recently changed and now appears at 47 C.F.R. § 64.1200(a)(4)(iv) in our current rules, but is sometimes referenced by Anda and other parties in this matter as originally adopted 47 C.F.R. § 64.1200(a)(3)(iv).  We reference the current rule section throughout our discussion.

[62]  *Anda Order,* 27 FCC Rcd at 4914, para. 5.

[63]  *Junk Fax Order*, 21 FCC Rcd at 3824, para. 69 (App. B).

[64]  *See 2006 Public Notice.*

[65]  *See* 47 U.S.C § 227(b)(2).

[66]  *Id.* § 227(a)(5) (emphasis added).  We note that section 227(b)(2) of the Act authorizes the Commission to "prescribe regulations to implement the requirements of this subsection."  *See* 47 U.S.C. § 227(b)(2).

[67]  *See Junk Fax Order*, 21 FCC Rcd at 3811-12, paras. 45-48.  As the Supreme Court has held, "agencies have authority to fill gaps where the statutes are silent."  *Nat'l Cable & Telecommunications Ass'n v. Gulf Power*, 534 U.S. 327, 339 (2002).

[68]  *Junk Fax Order*, 21 FCC Rcd at 3812, para. 46 (emphasis added).

permission is, therefore, important to determine whether prior express permission remains in place. Some fax recipients, after initially consenting to receive fax ads, will decide they no longer wish to receive future faxes because, for example, they have found another vendor they prefer or no longer need the product or service being advertised – and petitioners do not contend otherwise. The record here confirms that, absent a requirement to include an opt-out notice on fax ads sent with prior express permission, recipients could be confronted with a practical inability to make senders aware that their consent is revoked.[69] At best, this could require such consumers to take, potentially, considerable time and effort to determine how to properly opt out, which would place the burden on the consumer to find an effective means to revoke such consent, assuming that such a means even exists.[70] At worst, it would effectively lock in their consent at a point where they no longer wish to receive such faxes.[71] The opt-out notice requirement ensures that the recipient has the necessary contact information to opt out of future fax ads and can do so in a timely, efficient and cost-free manner,[72] specifically tied to the Commission's implementation of section 227(b). It also benefits the fax sender by ensuring that opt-out requests are directed to a contact point designated by the fax sender to process such requests.[73] Moreover, we find that giving consumers a cost-free, simple way to withdraw previous consent is good policy. As the Bureau noted, in adopting the opt-out notice requirement, the Commission recognized that consumers who have provided prior express permission for the receipt of fax ads might subsequently choose to withdraw that

[69] *See, e.g.* Nat'l Ass'n or Consumer Advocates Comments at 2 ("Without such [opt-out] information, a subsequent fax cannot be said to have been 'unsolicited,' as opposed to the result of the recipient not knowing or figuring out how to 'opt out.'"); Bellin & Assoc. Comments at 19 n.8 (absent the opt-out notice rule at issue "only those persons who receive unsolicited advertisements [would] be informed of how to properly opt out of receiving 'future unsolicited fax advertisements,' while leaving persons who had previously given permission to receive such fax advertisements in the dark on how to do so."); Nack Comments at 1 ("At times in the past, if a phone number appeared on the fax advertisement I would call the advertiser to tell them that I did not give permission to be sent the advertising fax and that I wanted them to remove my fax number from their fax list. A number of times the person that answered the phone had no knowledge that the company was even sending out fax advertisements and did not know what procedure to follow to stop getting the fax advertisements, which resulted in failure to have my request honored."). As Staples/Quill state, "[b]ut for the FCC's Rule, advertisers would not include such opt-out notices in consensual communications with their customers." Staples Petition at 11.

[70] Commenters in this proceeding highlight the importance of the opt-out notice in facilitating the ability of fax recipients to halt unwanted faxes. *See, e.g.*, Michael Nack Comments at 3 ("Many times before the new rules were enacted, I have had to hunt through tiny fonts on a fax to locate the instructions (if any) to make an opt-out request"); Robert Biggerstaff Comments at 9 ("there must be such a 'notice' and not merely miscellaneous pieces of information scattered about a fax that the recipient must find like a scavenger hunt"); Sound Justice Comments at 1 ("limiting the opt-out notice requirement would impair the ability of consumers to revoke their consent").

[71] *See, e.g.*, H.R. Rep. No. 317, 102d Cong., 1st Sess. 11 (1991) (describing the inconvenience associated with unwanted faxes).

[72] We note that the content of the opt-out notice required for fax ads sent with prior express permission is identical to that Congress required for faxes sent with an EBR.

[73] *See* 47 C.F.R. § 64.1200(a)(4)(v) (specifying that a recipient's request to opt out must be "made to the telephone number, facsimile number, Web site address or email address identified in the sender's facsimile advertisement"); *see also* 47 U.S.C. § 227(b)(2)(E); *see also Junk Fax Order*, 21 FCC Rcd at 3805-06, para. 34 ("permitting opt-out requests to be made through other avenues not identified in the notice will impair an entity's ability to account for all requests and process them in a timely manner"). Some commenters raise the concern that, because sections 64.1200(a)(4)(iii) and (v) make the failure to honor opt-out requests unlawful only when those requests, among other things, are made to the contact point specified in the opt-out notice on the fax itself, fax senders are under no obligation to honor opt-out requests where their faxes do not include the required opt-out information. We note that under this scenario, the fax sender would be in violation of our rules by failing to include the required opt-out information in the fax so that the recipient could make an effective opt-out request. The two rules – one requiring the fax sender to provide opt-out information and the other requiring the recipient to use that information when making an opt-out request – are intended to work in concert to ensure that the recipient benefits from the fax sender being able to effectively process such a request. *See, e.g.*, Bellin & Associates Comments at 22.

consent.[74]  In addition, the Commission has recently adopted an enhanced opt-out notification requirement in another TCPA area – robocalls – to better enable consumers to opt out of future marketing messages, including those to which they previously consented.[75]  Similarly, in its *SoundBite* decision, the Commission found that allowing texts to consumers confirming a consumer's desire to withdraw prior consent is sound consumer policy that does not violate the TCPA.[76]

21.     Finally, we reject any implication that by addressing the petitions filed in this matter while related litigation is pending, we have "violate[d] the separation of powers vis-à-vis the judiciary,"[77] as one commenter has suggested.  By addressing requests for declaratory ruling and/or waiver, the Commission is interpreting a statute, the TCPA, over which Congress provided us authority as the expert agency.[78]  Likewise, the mere fact that the TCPA allows for private rights of action based on violations of our rules implementing that statute in certain circumstances[79] does not undercut our authority, as the expert agency, to define the scope of when and how our rules apply.[80]

**B.      Waiver**

22.     Although we deny those requests that challenge the Commission's legal authority to adopt section 64.1200(a)(4)(iv) of the Commission's rules requiring an opt-out notice on fax ads sent with the prior express permission of the recipient, we find good cause exists to grant a retroactive waiver to the petitioners.[81]  For the reasons discussed below, we believe the public interest is better served by granting such a limited retroactive waiver than through strict application of the rule.  Other, similarly situated entities likewise may request retroactive waivers from the Commission, as well.

23.     The Commission may waive any of its rules for good cause shown.[82]  A waiver may be granted if:  (1) special circumstances warrant a deviation from the general rule and (2) the waiver would better serve the public interest than would application of the rule.[83]

---

[74] *See Anda Order*, 27 FCC Rcd at 4915, para. 7.

[75] *See generally Robocalls Order*, 27 FCC Rcd 1830.

[76] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, SoundBite Communications, Inc. Petition for Expedited Declaratory Ruling*, CG Docket No. 02-278, Declaratory Ruling, 27 FCC Rcd 15391  (2012).  In addition, the Mobile Marketing Association's U.S. Consumer Best Practices requires senders of marketing texts to make it simple for consumers to opt-out of campaigns for which they have given prior consent.  Under this code, marketers must feature the word "STOP" as an opt out means in the marketers' advertising and messaging.  *See U.S. Consumer Best Practices*, Mobile Marketing Association, version 6.0, at 1.6-1, 1.6-2 (Mar. 1, 2011).

[77] *See* Letter from Brian J. Wanca, Anderson & Wanca, to Marlene H. Dortch, FCC, dated May 5, 2014.

[78] *See* 47 U.S.C. § 227(b)(2) ("The Commission shall prescribe regulations to implement the requirements of this subsection."); 47 C.F.R. § 1.2.  *See also, e.g., NCTA v. Brand X*, 545 U.S. 967, 980 (2005) ("Congress has delegated to the Commission the authority to 'execute and enforce' the Communications Act, . . . and to 'prescribe such rules and regulations as may be necessary in the public interest to carry out the provisions' of the Act.") (citations omitted); *id*. at 983-84 ("[W]hether Congress has delegated to an agency the authority to interpret a statute does not depend on the order in which the judicial and administrative constructions occur. . . .  Instead, the agency may . . . choose a different construction [than the court], since the agency remains the authoritative interpreter (within the limits of reason) of such statutes.").

[79] 47 U.S.C. § 227(b)(3).

[80] *See, e.g.,* 47 U.S.C. § 227(b)(2); *Northeast Cellular v. FCC*, 897 F.2d 1164 (D.C. Cir. 1990) ("The FCC has authority to waive its rules if there is 'good cause' to do so. 47 C.F.R. § 1.3. The FCC may exercise its discretion to waive a rule where particular facts would make strict compliance inconsistent with the public interest.").

[81] *See supra* n.4 (complete listing of petitions covered by this Order).

[82] 47 C.F.R. § 1.3; *WAIT Radio v. FCC*, 418 F.2d 1153 (D.C. Cir. 1969); *appeal after remand*, 459 F.2d 1203 (D.C. Cir. 1972), *cert. denied*, 409 U.S. 1027 (1972); *Northeast Cellular Tel. Co. v. FCC*, 897 F.2d 1164 (D.C. Cir. 1990).

24.     We first find that special circumstances warrant deviation from the general rule. Specifically, there are two grounds that we find led to confusion among affected parties (or misplaced confidence that the opt-out notice rule did not apply to fax ads sent with the prior express permission of the recipient), the combination of which present us with special circumstances warranting deviation from the adopted rule.  The record indicates that inconsistency between a footnote contained in the *Junk Fax Order* and the rule caused confusion or misplaced confidence regarding the applicability of this requirement to faxes sent to those recipients who provided prior express permission.[84]  Specifically, the footnote stated that "the opt-out notice requirement only applies to communications that constitute *unsolicited* advertisements."[85]  The use of the word "unsolicited" in this one instance may have caused some parties to misconstrue the Commission's intent to apply the opt-out notice to fax ads sent with the prior express permission of the recipient.  We note that all petitioners make reference to the confusing footnote language in the record.[86]

25.     Further, some commenters question whether the Commission provided adequate notice of its intent to adopt section 64.1200(a)(4)(iv).[87]  Although we find the notice adequate to satisfy the requirements of the Administrative Procedure Act,[88] we acknowledge that the notice provided did not make explicit that the Commission contemplated an opt-out requirement on fax ads sent with the prior express permission of the recipient.[89]  While that requirement was a "logical outgrowth"[90] of the proposal

(Continued from previous page) ───────────────────────

[83] *Id.* at 1166.

[84] *See, e.g.*, All Granite Petition at 4; Best Buy Petition at 4; Futuredontics Petition at 4; Gilead Petition at 13; Magna Petition at 7; Masimo Petition at 14; Purdue Pharm Petition at 9; Prime Health Petition at 5; S&S Petition at 7; Stericycle Petition at 9; TechHealth Petition at 9; Walburg Petition at 4.

[85] *See Junk Fax Order*, 21 FCC Rcd at 3810, n.154 (emphasis added).

[86] *See* Anda Application for Review at 5-6 (the rule "was in direct conflict with an earlier footnote"); All Granite Petition at 4 ("[t]he JFPA Order also contains contradictory language regarding the scope of Section 64.1200(a)(4)(iv) simultaneously explaining that 'the opt-out notice requirement only applies to communications that constitute unsolicited advertisements' and that an opt-out notice is required for solicited faxes 'to allow consumers to stop unwanted faxes in the future'"); American Petition at 3 ("the Commission's 2006 final order…contradictorily states on the one hand that 'opt-out notice requirement only applies to communications that constitute unsolicited advertisements,' but on the other hand that 'entities that send facsimile advertisements to consumers from whom they obtained permission must include on the advertisements their opt-out notice.'")); Best Buy Petition at 4 ("the JFPA Order also contains contradictory language"); Cannon Comments at 2, 7-8 ("the Commission's order promulgating this rule is also inconsistent with the rule at issue"); CARFAX Petition at 6-8; Crown Petition at 7-8 ("[t]he JFPA Order also contains contradictory language"); Forest Reply Comments at 12 ("internally contradictory language"); Futuredontics Petition at 4 ("contradictory language"); Gilead Petition at 13 ("offered inconsistent explanations"); Magna Petition at 7 (footnote "add[ed] confusion"); Masimo Petition at 14 ("offered inconsistent explanations"); Medica Petition at 6-9; Merck Petition at 5-9; Power Liens Petition at 10; Purdue Pharma Petition at 9 ("inconsistent explanations"); Prime Health Petition at 5 ("contradictory language"); S&S Firestone Petition at 7-8 ("contradictory language"); Staples Petition at 5 ("confusion and conflicting statements"); Stericycle Petition at 9 (noting that the "Commission acknowledged the conflicting language"); Tech Health Petition at 9 ("The Junk Fax Order confuses things further"); Unique Petition at 13; UnitedHealth Petition at 5-7; Walburg Petition at 4 ("contradictory language").

[87] *See* Anda Comments at 7; Staples Comments at 8.

[88] *See* 5 U.S.C. §§ 551 *et seq.*

[89] *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Protection Act*, CG Docket Nos. 02-278 and 05-338, Notice of Proposed Rulemaking, 20 FCC Rcd 19758, 19767-70, paras. 19-25 (2005) (*Junk Fax NPRM*).

[90] *See, e.g.*, *Northeast Md. Waste Disposal Auth. v. EPA*, 358 F.3d 936, 951-52 (D.C. Cir 2004) ("an agency satisfies the [APA] notice requirement, and need not conduct a further round of public comment, as long as its final rule is a 'logical outgrowth' of the rule it originally proposed"); *see also* 47 C.F.R. § 68.318(d).

to impose an opt-out notice requirement on fax ads sent pursuant to an EBR and the interplay of proposed opt-out notice requirements with existing identification requirements required on fax ads, we find that, in combination with the confusion caused by inconsistency in the *Junk Fax Order*, the lack of explicit notice may have contributed to confusion or misplaced confidence about this requirement.[91]

26.        We find that this specific combination of factors presumptively establishes good cause for retroactive waiver of the rule.  Further, we find nothing in the record here demonstrating that the petitioners understood that they did, in fact, have to comply with the opt-out notice requirement for fax ads sent with prior express permission but nonetheless failed to do so.[92]  We emphasize, however, that simple ignorance of the TCPA or the Commission's attendant regulations is not grounds for waiver.  Rather, it is the inconsistent footnote, combined with the other factors explained above, that led to confusion or misplaced confidence on the part of petitioners, and this, along with particular facts and concerns relevant to the public interest at this time (as explained below), warrants deviation from the rule.[93]

27.        Second, we find that granting a retroactive waiver would serve the public interest.  The record in this proceeding demonstrates that a failure to comply with the rule – which as noted above could be the result of reasonable confusion or misplaced confidence – could subject parties to potentially substantial damages,[94] as well as possible liability for forfeitures under the Communications Act.  Indeed, we have a duty to "seek out the 'public interest' in particular, individualized cases."[95]  Moreover, the TCPA's legislative history makes clear our responsibility to balance legitimate business and consumer interests.[96]  The lack of explicit notice, though legally adequate, and the ensuing contradictory footnote has, as shown in the record, resulted in a confusing situation for businesses or one that caused businesses mistakenly to believe that the opt-out notice requirement did not apply.[97]  This confusion or misplaced

---

[91] *See, e.g., Junk Fax NPRM,* 20 FCC Rcd at 19769-70, paras. 24-25 (seeking comment on requirements regarding requests not to receive *future* unsolicited fax ads); *see also id.* at 19768-69, para. 21 (noting that the Commission's rules require senders of fax messages to identify themselves).  We find this confusion or misplaced confidence regarding the rule sufficiently significant to demonstrate good cause for waiver even though this rule is intended to work in concert with the rule requiring the recipient to use information on fax opt-out notices when making an opt-out request, as discussed above.  *See supra* n.72.  Under the particular circumstances here, we thus reject arguments that the interplay of the two rules counsels against waiver.  *See, e.g.,* St. Louis Health Center *et al.* Comments at 22 & n.120; Bellin & Associates Comments at 33.

[92] As noted above, each petitioner notes the contradictory language contained in the footnote.  *See supra* n.85.

[93] As noted above, however, other, similarly situated entities likewise may request retroactive waivers from the Commission.

[94] *See, e.g.,* Forest Petition at 3-4; Purdue Petition at 3; Staples Petition at 5-6.

[95] *WAIT Radio,* 418 F.2d at 1157.

[96] The Congressional Findings in the TCPA's preamble stress that "[i]ndividuals privacy rights, public safety interests, and commercial freedoms of speech and trade must be balanced in a way that protects the privacy of individuals and permits legitimate telemarketing practices."  Telephone Consumer Protection Act, Pub. L. 102–243, §3(a), 105 Stat. 2395, Sec. 2(9) (Dec. 20, 1991).  The President, when signing the TCPA, noted that he signed the bill because it gives the Commission "ample authority to preserve legitimate business practices."  *See* George Bush "Statement on Signing the Telephone Consumer Protection Act of 1991," available at http://www.presidency.ucsb.edu/ws/?pid=20384.  Additionally, in promulgating our TCPA rules, the Commission noted that its task in implementing the TCPA was to, "implement the TCPA in a way that balances individuals' rights to privacy as well as legitimate business interests of telemarketers."  *See 1992 TCPA Order,* 7 FCC Rcd at 8754, para. 3.

[97] As noted in the FCC *amicus* brief where a conflict exists between the text and a footnote in the same agency Order, established precedent provides that "the text of the [agency's] decision controls" *(citing United Steelworkers of Am., AFL-CIO v. NLRB,* 389 F.2d 295, 297 (D.C. Cir. 1967)).  *See Nack* at 18-19 http://hraunfoss.fcc.gov/edocs_public/attachmatch/DOC-312766A1.pdf).  Our decision herein is not contradictory

(continued....)

confidence, in turn, left some businesses potentially subject to significant damage awards under the TCPA's private right of action or possible Commission enforcement.[98]  We acknowledge that there is an offsetting public interest to consumers through the private right of action to obtain damages to defray the cost imposed on them by unwanted fax ads.  On balance, however, we find it serves the public interest in this instance to grant a retroactive waiver to ensure that any such confusion did not result in inadvertent violations of this requirement while retaining the protections afforded by the rule going forward.[99]

28.     Taken together, the inconsistent footnote in the *Junk Fax Order* and the lack of explicit notice in the *Junk Fax NPRM* militates in favor of a limited waiver in this instance.  Confusion or misplaced confidence about the rule, however, warrants some relief from its potentially substantial consequences.  Thus, to be clear, our finding is not that the risk of substantial liability in private rights of action is, by itself, an inherently adequate ground for waiver, as some commenters note.[100]  But we disagree that it cannot be a factor for our consideration, in conjunction with other considerations, like the potential for Commission enforcement, as well.  Where we find specific factual circumstances make enforcing the rule unjust or inequitable, we may waive the requirement in the public interest.[101]  Because we do not waive the rule indefinitely, consumers will not, as a result of our action, be deprived of the rule's value.

29.     We emphasize that full compliance with the requirement to provide an opt-out notice on fax ads sent with the prior express permission of the recipient is expected from waiver recipients six months from the release date of this Order now that any potential for confusion on this point has been addressed and interested parties have been given additional notice of this requirement.  We reiterate that the waiver granted herein applies only to the petitioners insofar as they may have failed to comply with section 64.1200(a)(4)(iv) prior to six months from the release date of this Order.  As a result, the waiver granted herein shall not apply to such conduct that occurs more than six months after the release date of this Order nor shall it apply to any situation other than where the fax sender had obtained the prior express invitation or permission of the recipient to receive the fax advertisement.  We direct the Bureau to conduct outreach to inform potential senders of our reconfirmed requirement to include an opt-out on faxes.

30.     Other, similarly situated parties, may also seek waivers such as those granted in this Order.  Having confirmed the Commission's requirement to provide opt-out notices on fax ads sent with the recipient's prior express permission, however, we expect all fax senders to be aware of and in

---

(Continued from previous page) ─────────────────────
with this precedent as we uphold the validity of the rule; it merely acknowledges that such inconsistency has resulted in some confusion.

[98] *See, e.g.*, Best Buy Petition at 5 ("Best Buy is now facing a putative class action lawsuit, alleging millions of damages, a claim for which it has no insurance coverage and no ability to pay"); Futuredontics Petition at 4; Magna Petition at 2 ("now facing a putative class action that threatens to end its 43-year corporate life"); Masimo Petition at 2 ("[i]t is not uncommon for class action lawsuits to seek millions of dollars or more in statutory damages"); Staples Petition at 7.

[99] We note that the waiver granted herein is limited only to the Commission's rule 64.1200(a)(4)(iv), which requires that a fax ad "sent to a recipient that has provided prior express invitation or permission to the sender must include an opt-out notice that complies with the requirements in [section 64.1200(a)(4)(iii)] of this section."  *See* 47 C.F.R § 64.1200(a)(4)(iv).  The waiver does *not* extend to the similar requirement to include an opt-out notice on fax ads sent pursuant to an established business relationship as there is no confusion regarding the applicability of this requirement to such faxes.  *See* 47 C.F.R. § 64.1200(a)(4)(iii).

[100] *See, e.g.*, Bellin & Associates Comments at 9.

[101] *WAIT Radio*, 418 F.2d at 1159 ("…a rule is more likely to be undercut if it does not in some way take into account considerations of hardship, equity, or more effective implementation of overall policy, considerations that an agency cannot realistically ignore, at least on a continuing basis").

compliance with this requirement. We expect parties making similar waiver requests to make every effort to file within six months of the release of this Order.[102]

31.     We emphasize that this waiver does not affect the prohibition against sending unsolicited fax ads, which has remained in effect since its original effective date.[103] Nor should the granting of such waivers be construed in any way to confirm or deny whether these petitioners, in fact, had the prior express permission of the recipients to be sent the faxes at issue in the private rights of action.[104]

### C.     Other Issues

32.     Having confirmed the Commission's authority to adopt the requirement to provide opt-out notices on fax ads sent with the recipient's prior express permission and granting a retroactive waiver of this requirement to parties that have been confused by the footnote, we deny the remaining requests contained in the Petitions. First, we deny Staples' request to repeal this rule because of an alleged lack of statutory authority or on First Amendment grounds.[105] The statutory basis and sound policy objectives underlying the opt-out rule have been discussed in detail above in denying a similar request made via a declaratory ruling.[106] We rely on that analysis here and find no further basis to rule differently in response to Staples request.[107] Nor do we find any basis to repeal the rule on First Amendment grounds. We note that the requirement to include an opt-out notice of fax ads survives a First Amendment challenge if it "furthers an important governmental interest that is unrelated to the suppression of free expression and the incidental restriction on alleged First Amendment freedom is no greater than is essential to the furtherance of that interest."[108] As discussed in greater detail above, Congress has expressed a strong governmental interest in protecting consumers from the costs and annoyance of unwanted fax ads.[109] The opt-out notice provides consumers who have given prior express permission to be sent faxes the ability to revoke that permission and have them halted, should they decide they no longer wish to receive them. In that respect, the opt-out notice is not only necessary but essential to further the governmental interest in protecting consumer from unwanted fax ads.

33.     Finally, we deny the request of those petitioners seeking a declaratory ruling that fax ads that "comply substantially" with section 64.1200(a)(4)(iv) do not violate any regulation promulgated under the Act, even if the opt-out notice included on the fax does not conform with all of the specified requirements of that rule.[110] The Commission has not applied a substantial compliance standard to

---

[102] At the same time, we note that all future waiver requests will be adjudicated on a case-by-case basis and do not prejudge the outcome of future waiver requests in this Order.

[103] See 47 C.F.R. § 64.1200(a)(4).

[104] The record indicates that whether some of the petitioners had acquired prior express permission of the recipient remains a source of dispute between the parties. See, e.g., Letter from Brian J. Wanca, Counsel for Anderson & Wanca, to Marlene H. Dortch, FCC, filed in CG Docket No. 05-338 (dated June 23, 2014) at 2 (alleging that he "has obtained evidence contradicting the implication that Stericycle obtained permission before sending its faxes").

[105] See Staples Petition at 8-15; Cannon Petition at 8-9; see also Anda Application for Review at 12 (alleging First Amendment implications).

[106] See supra paras. 16-20.

[107] Although Staples continues to seek repeal of the rule, we note that Staples confirms that a "blanket, retroactive waiver for solicited faxes would provide Staples and Quill (and other defendants in TCPA class actions where the plaintiffs received such faxes) with all the relief they need…"). See Staples Comments at 8. As discussed above, such a retroactive waiver has been granted for the petitioners herein, and can be requested by other, similarly situated entities.

[108] See, e.g., Turner Broadcasting v. FCC, 512 U.S. 622 (1994).

[109] See supra para. 4.

[110] See Forest Petition at 1, 10; Gilead Petition at 1, 9; Magna Petition at 8-9; Masimo Petition at 8-10; Purdue Pharma Petition at 13-17.

section 64.1200(a)(4)(iv).  To the contrary, in enforcement actions, the Commission has proceeded under the understanding that full compliance is required.[111]  Consequently, we find no uncertainty or controversy in need of resolution with respect to whether 'substantial compliance' with section 64.1200(a)(4)(iv) is sufficient to comply with that rule.  Moreover, to the extent that accepting this "substantial compliance" argument would result in a different legal standard being applied to determine compliance, petitioners essentially argue that the Commission should have adopted a different rule.  As such, this argument could be viewed as another attempt to collaterally challenge the rule as adopted that, as noted above, should have been presented in a timely petition for reconsideration.

## IV.    ORDERING CLAUSES

34.    Accordingly, IT IS ORDERED, pursuant to sections 1-4, 227, and 405 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 151-154, 227, 405, and sections 1.2, 1.3, 1.115, 1.401, and 64.1200 of the Commission's rules, 47 C.F.R. §§ 1.2, 1.3, 1.115, 1.401, 64.1200, that the Application for Review filed by Anda, Inc. in CG Docket No. 05-338 on May 14, 2012, IS DENIED to the extent discussed herein.

35.    IT IS FURTHER ORDERED that the requests for declaratory ruling and/or rulemaking filed by All Granite & Marble, Corp.; American CareSource Holdings, Inc., Best Buy Builders, Inc.; Cannon & Associates LLC; CARFAX, Inc.; Crown Mortgage Company; Forest Pharmaceuticals, Inc.; Futuredontics, Inc.; Gilead Sciences, Inc.; Magna Chek, Inc.; Masimo Corporation; MedLearning, Inc. and Medica, Inc.; Merck & Company, Inc.; Power Liens, LLC; Prime Health Services; Purdue Pharma; S&S Firestone, Inc.; Staples, Inc. and Quill Corporation; Stericycle, Inc.; Tech Health Inc.; Unique Vacations, Inc.; UnitedHealth Group, Inc.; and Douglas Paul Walburg and Richie Enterprises, LLC, respectively in CG Docket Nos. 02-278 and 05-338 ARE DENIED to the extent discussed herein.

36.    IT IS FURTHER ORDERED that retroactive waivers of the Commission's rule 47 C.F.R. § 64.1200(a)(4)(iv) ARE GRANTED to All Granite & Marble Corp.; American CareSource Holdings, Inc., Anda, Inc.; Best Buy Builders, Inc.; Cannon & Associates LLC d/b/a Polaris Group; CARFAX, Inc.; Crown Mortgage Company; Forest Pharmaceuticals, Inc.; Futuredontics, Inc.; Gilead Sciences, Inc. and Gilead Palo Alto, Inc.; Magna Chek, Inc.; Masimo Corp.; MedLearning, Inc. and Medica, Inc.; Merck & Company, Inc.; Power Liens, LLC; Purdue Pharma, Inc.; Prime Health Services, Inc.; S&S Firestone, Inc., d/b/a S&S Tire; Staples, Inc. and Quill Corporation; Stericycle, Inc.; TechHealth, Inc.; Unique Vacations, Inc.; UnitedHealth Group, Inc.; and Douglas Paul Walburg and Richie Enterprise, LLC insofar as they may have failed to comply with the opt-out notice requirements of this rule for fax advertisements sent with the prior express invitation or permission of the recipient prior to **April 30, 2015**.  Full compliance with this rule is required by these parties from that date forward.

FEDERAL COMMUNICATIONS COMMISSION

Marlene H. Dortch
Secretary

---

[111] *See, e.g.*, *Sabrina Javani D/B/A EZ Business Loans*, Notice of Apparent Liability for Forfeiture, EB-TC-12-00000256, 27 FCC Rcd 7921 at 7926-27, para. 11 (noting that while the faxes at issue contained some of the required opt-out information including a toll-free number, and in some cases, a website address that recipients could contact to opt out from future fax transmissions, the notices did not include the required statement that failure to comply with a properly filed opt-out request within 30 days is unlawful; as a result, "we consider these additional violations as aggravating factors that also warrant upward adjustment of our base forfeiture amounts") (2012); *Tim Gibbons*, Notice of Apparent Liability for Forfeiture, EB-TCD-12-00000234, 27 FCC Rcd 11432 at 11428, para. 14 (2012).

Federal Communications Commission                                    FCC 14-164

# APPENDIX

## List of Commenters

The following parties have filed comments in response to the various Public Notices issued in this matter (CG Docket Nos. 05-338; 02-278):*

| Commenter | Abbreviation |
|---|---|
| All Granite & Marble Corporation | All Granite |
| Anda, Inc. | Anda |
| Anderson & Wanca | Anderson |
| Bellin & Associates, LLC | Bellin & Associates |
| Robert Biggerstaff | Biggerstaff |
| Cannon & Associates, LLC | Cannon |
| Cohen, Dippell and Everist, P.C. | CDE |
| Forest Pharamaceuticals et al | Forest |
| International Pharmaceutical Privacy Consortium | IPPC |
| John Lary | Lary |
| Masimo Corporation | Masimo |
| McKesson Corporation | McKesson |
| Merck & Co., Inc. | Merck |
| Michael Nack | Nack |
| National Association of Consumer Advocates | NACA |
| National Association of Manufacturers | NAM |
| Sound Justice Law Group, PLLC | Sound Justice |
| Staples Inc. & Quill Corporation | Staples |
| St. Louis Heart Center et al | St. Louis Heart Center |
| Douglas Walburg and Futuredontics, Inc. | Walburg |

* A number of individual consumers have also filed brief comments in this matter.  All comments, including those cited in this Order, are available for inspection on the Commission's Electronic Comment Filing System.

17

Federal Communications Commission                    FCC 14-164

## STATEMENT OF
## COMMISSIONER AJIT PAI
## CONCURRING IN PART AND DISSENTING IN PART

Re:     *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG
        Docket No. 02-278; *Junk Fax Prevention Action of 2005*, CG Docket No. 05-338; *Application for
        Review filed by Anda, Inc.; Petitions for Declaratory Ruling, Waiver, and/or Rulemaking
        Regarding the Commission's Opt-Out Requirement for Faxes Sent with the Recipient's Prior
        Express Permission*.

What information must a solicited fax advertisement contain to be lawful?  The Telephone
Consumer Protection Act (TCPA) gives one answer; our rules give another.  Unsurprisingly, these
divergent answers have sparked vigorous disputes in the courts and in our own halls.

I concur with my colleagues that strict enforcement of our rules in these circumstances would
contravene the public interest.  But I cannot support either the Commission's attempt to retroactively
justify our rules as comporting with the TCPA or its attempt to evade judicial review by claiming that no
controversy exists.  My position is simple.  To the extent that our rules require solicited fax
advertisements to contain a detailed opt-out notice, our regulations are unlawful.  And to the extent that
they purport to expose businesses to billions of dollars in liability for failing to provide detailed opt-out
notices on messages that their customers have specifically asked to receive, they depart from common
sense.  Therefore, I concur in part and dissent in part.

I.

Two separate provisions of the TCPA—sections 227(b) and (d)—set forth the information that
fax advertisements must contain to be lawful.  Accordingly, I will begin "where all such inquiries must
begin: with the language of the statute itself."[1]

Section 227(d) sets forth a general requirement that fax advertisements must contain sender-
identification information.  Specifically, each fax advertisement must "clearly mark[], in a margin at the
top or bottom . . . on the first page of the transmission, the date and time it is sent and an identification of
the business . . . sending the message and the telephone number of the sending machine or of such
business."[2]  For twenty years, Congress has required manufacturers to design fax machines to facilitate
compliance with this law.[3]

Section 227(b), in contrast, lays out a much more detailed opt-out notice.  That notice (1) must be
"clear and conspicuous" and "on the first page of the unsolicited advertisement," (2) must state that the
recipient may opt out from "future unsolicited advertisements," (3) must note that a failure by the "sender
of the unsolicited advertisement" to comply with an opt-out request is unlawful, (4) must include a
domestic contact number and fax number for the recipient to send an opt-out request, (5) must include a
cost-free mechanism to send an opt-out request "to the sender of the unsolicited advertisement," (6) must
instruct the recipient that a "request not to send future unsolicited advertisements" is valid only if sent to
the "number of the sender of such an unsolicited advertisement" identified in the notice, identifies the opt-
out number, and thereafter the recipient does not expressly invite fax advertisements, and (7) must also
comply "with the requirements of subsection (d)."[4]

---

[1] *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989).

[2] 47 U.S.C. § 227(d)(1)(B).

[3] 47 U.S.C. § 227(d)(2).

[4] 47 U.S.C. § 227(b)(2)(D)–(E).

Sections 227(b) and 227(d) also differ in their coverage. Section 227(d) applies broadly to "*any* message [sent] via a telephone facsimile machine."[5] In contrast, section 227(b) applies only to a more limited set of messages: "unsolicited advertisement[s],"[6] i.e., fax advertisements "transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."[7] Indeed, the TCPA uses the phrase "unsolicited advertisement" *nine separate times* in describing the detailed opt-out notice of section 227(b), making clear Congress's intent that this notice *only* applied to unsolicited advertisements.[8]

In other words, the text of the TCPA does not require solicited fax advertisements to contain the same detailed opt-out notice required of unsolicited advertisements.[9]

Nor could it be construed otherwise. In the TCPA, Congress confronted the task of "balancing the privacy rights of the individual and the commercial speech rights of the telemarketer."[10] And when Congress added the detailed opt-out notice provisions to section 227(b) in the Junk Fax Prevention Act of 2005, its focus was balancing the need of "legitimate businesses to do business with their established customers" with the need of "recipients . . . to stop future unwanted faxes sent pursuant to such relationships."[11] As part of those amendments, Congress decided to impose detailed notice requirements on "unsolicited advertisements" but not other fax advertisements. When the legislature passes a statutory scheme that precisely traces a congressional compromise, interpreters must respect the contours of that compact.[12] Indeed, reading section 227(b)'s notice requirements to cover all fax advertisements would effectively read the phrase "unsolicited" out of that subsection.[13]

---

[5] 47 U.S.C. § 227(d)(1)(B) (emphasis added).

[6] 47 U.S.C. § 227(b)(1)(C)(iii) (making it unlawful "to send . . . an unsolicited advertisement, unless . . . the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D)"); 47 U.S.C. § 227(b)(2)(D) ("[A] notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if . . . .").

[7] 47 U.S.C. § 227(a)(5).

[8] 47 U.S.C. § 227(b)(1)(C)(iii) (using the phrase "unsolicited advertisement" twice); 47 U.S.C. § 227(b)(2)(D) (using the phrase five times); 47 U.S.C. § 227(b)(2)(E) (using the phrase twice more).

[9] The commenters vigorously contest the constitutionality of applying section 227(b)'s detailed opt-out notice in addition to the sender-identification notice to solicited faxes. *Compare, e.g.*, Anda Reply at 11 (contending the application would fail the test set forth in *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of NY*, 447 U.S. 557 (1980)), *with* Bellin Comments at 25 (contending the application would pass the test set forth in *Zauderer v. Office of Disciplinary Counsel of Supreme Court*, 471 U.S. 626 (1985)). We need not resolve the issue, however, because the canon of avoidance counsels that if one interpretation of a statute "would raise a multitude of constitutional problems, the other should prevail." *Clark v. Martinez*, 543 U.S. 371, 380–81 (2005). And here, the canon counsels against interpreting the statute to subject voluntary communications to crippling class-action lawsuits if a sender does not strictly comply with a government-mandated detailed disclosure, especially when that disclosure would serve no purpose (such as when a recipient requests, and the sender sends, only a single fax).

[10] Report of the Energy and Commerce Committee, H.R. Rep. 102-317, at 10 (1991).

[11] Report of the Committee on Commerce, Science, and Transportation on S. 714, S. Rep. 109-76, at 6–7 (2005).

[12] *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 93–94 (2002) (explaining that "like any key term in an important piece of legislation, the [statutory provision in question] was the result of compromise between groups with marked but divergent interests in the contested provision" and that "[c]ourts and agencies must respect and give effect to these sorts of compromises"); *see also* John F. Manning, *Second-Generation Textualism*, 98 CAL. L. REV. 1287, 1309–17 (2010) (arguing that respecting legislative compromise means that courts "must respect the level of generality at which the legislature expresses its policies").

[13] *Walters v. Metropolitan Educational Enterprises, Inc.*, 519 U.S. 202, 209 (1997) ("Statutes must be interpreted, if possible, to give each word some operative effect.").

Moreover, Congress's differentiated treatment of solicited and unsolicited faxes matters because the statute provides different remedies for violations. States and the FCC may pursue civil and enforcement actions against any sender that violates section 227(d)'s sender-identification requirements.[14] And while these remedies extend to section 227(b), that subsection also contains a private right of action against those that send unsolicited advertisements in violation of the law, including sending such an advertisement without a proper opt-out notice.[15]

It's not hard to see why Congress treated unsolicited advertisements differently from solicited advertisements. A recipient presumably wants a solicited advertisement; why else would a consumer give his "prior express permission" to a sender? And a recipient may tailor his permission to the circumstances, for example, by giving express consent to receive only a single fax advertisement. In circumstances like those, a detailed opt-out notice would only confuse the recipient—why would he need to opt-out of future faxes if he'd only consented to one? And because section 227(d) already requires a solicited fax to identify the sender's fax number, a recipient has a ready means to contact the sender and revoke his consent.

By contrast, there's no particular reason to think that a recipient wants an unsolicited advertisement, and so he is more likely to want to opt out. Because the recipient hasn't consented, he's had no opportunity to put limits on the fax advertisements he might receive, and he may not even realize that opting out is an option. After all, a recipient may reasonably expect a sender that has solicited his consent to respect its revocation, whereas a recipient may have no such expectation about a sender that hasn't bothered to receive prior permission unless notified otherwise.

So if the statute clearly applies one set of notice requirements to unsolicited advertisements and another to solicited faxes, what are we even doing here? In a feat of administrative bravado, the Commission claims that it can countermand the clear line drawn in section 227(b) under its authority to "prescribe regulations to implement the requirements of" that very same subsection.[16] Indeed, the Commission claims that solicited faxes must contain *precisely* the same opt-out information as unsolicited faxes and are subject to precisely the same private rights of action absent strict compliance.[17]

That cannot be right. Normally the statute directs the agency, not the other way around. Or as the Supreme Court has said, "the language of the statute and not the rules must control."[18] The black-letter law is that an agency has discretion in interpreting a statute only when filling in gaps and clarifying ambiguities; when a statute both asks and answers a particular question, there is no gap to fill, no ambiguity to clarify.[19] Here, the question is which faxes must comply with the detailed opt-out notice of section 227(b) and may be subject to private rights of action. The statute's unambiguous answer: only unsolicited advertisements.

The Commission tries to avoid this answer with a peculiar chain of logic. It seizes on Congress's failure to define "prior express invitation or permission" in section 227(a)(5). It claims that the FCC's own definition of the scope of that phrase leaves open a further gap (i.e., how to determine "whether the

---

[14] 47 U.S.C. § 227(g).

[15] 47 U.S.C. § 227(b)(3).

[16] *Anda Order* at para. 19.

[17] *Id.* at para. 33; *id.* at n.71 ("We note that the content of the opt-out notice required for fax ads sent with prior express permission is identical to that Congress required for faxes sent with an EBR [i.e., unsolicited advertisements].").

[18] *Touche Ross & Co. v. Redington*, 442 U.S. 560, 577 (1979).

[19] *Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984) ("First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

20

sender of a fax advertisement retains the recipient's prior express permission . . . after the initial fax advertisement"). And it asserts that the Commission may fill this agency-created gap through the prophylactic measure of applying section 227(b)'s detailed opt-out notice to solicited faxes because it is good policy.[20]

These convoluted gymnastics do not work for several reasons. *First*, the text does not support this approach. Although section 227(b)(2) gives the Commission authority to prescribe rules, that authorization is explicitly limited to implementing "this subsection," i.e., subsection (b). The definitional hook for the Commission's argument, however, lies elsewhere, in subsection (a); and while *other* provisions of the Communications Act might let us prescribe rules for section 227(a), the Commission rejects that possibility.[21]

*Second*, the rule does not—and does not even purport to—fill the supposed statutory gap. Although Congress failed to define "prior express invitation or permission" in section 227(a)(5), neither do our rules.[22] And while it's not hard to imagine a rule that specifies "whether the sender of a fax advertisement retains the recipient's prior express permission . . . after the initial fax advertisement," that's not what the actual rule does.

*Third*, the claimed public policy impetus just doesn't exist. Despite suggestions that the lack of a detailed opt-out notice could cost consumers "considerable time and effort" or could "effectively lock in their consent,"[23] that is hardly the case. Recall that all faxes are already required to identify the sender, including the sender's fax number,[24] so a recipient will always have a timely, efficient, and direct means to contact the sender to revoke his consent. And while a sender may prefer for that revocation to come through "a contact point designated by the fax sender to process such requests,"[25] a sender can hardly complain if a recipient revokes consent via the fax number identified on a solicited fax that doesn't direct a recipient to revoke consent through a particular means.

If anything, good policy counsels against applying a detailed opt-out notice and private right of action to solicited faxes.[26] Take the case of attorney Michael Nack. He apparently directed the answering service for his office to provide his fax number and expressly consent to receiving a faxed advertisement from anyone who calls. Douglas Paul Walburg's small business stumbled into the trap, forgetting to include a detailed opt-out notice on the fax Nack's office agreed to receive—and now Nack is the lead plaintiff in a class-action suit seeking damages of up to $48,127,000.[27] Subjecting small businesses to crippling suits at the behest of predatory trial lawyers only serves the interests of those self-same lawyers, not the American public.

*Fourth*, one cannot help but notice that this chain of logic leads back to the very thing Congress decided not to do: apply the reticulated notice of section 227(b) to solicited faxes and expose senders of

---

[20] *Anda Order* at paras. 19–20.

[21] Notably, only a violation of rules promulgated under section 227(b)(2) would give recipients a private right of action, which is why Anda only asked that the Commission declare that section 227(b)(2) was not the authority for applying a detailed opt-out notice to solicited faxes.

[22] *See* 47 C.F.R. § 64.1200(f) (defining 16 separate terms, but not "prior express invitation or permission").

[23] *Anda Order* at para. 20.

[24] 47 U.S.C. § 227(d).

[25] *Anda Order* at para. 20.

[26] Notably, the Supreme Court has made clear that "[l]anguage in a regulation may invoke a private right of action that Congress through statutory text has created, but it may not create a right that Congress has not." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001). Here, Congress has created a private right of action only against senders of unsolicited advertisements that violate our rules—not senders of solicited faxes.

[27] *See Nack v. Walburg*, No. 4:10CV00478 AGF, 2011 WL 310249 (E.D. Mo. 2011).

soliciteded faxes to private rights of action, including class-action lawsuits. "Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes."[28]

For these reasons, I disagree that section 227(b) authorized the Commission to apply the detailed opt-out notice and the private right of action to solicited faxes.

II.

This extended discussion begs another question:  Why are we only now discussing the statutory basis of the Commission's decision to adopt a rule that applies the detailed opt-out notice and private right of action to solicited faxes?  The short answer:  We've never done it before.

When the Commission supposedly proposed the rule, it did "propose amending the Commission's rules to comply with the specific notice requirements on unsolicited facsimile advertisements,"[29] and it sought "comment on the interplay between [the] identification requirement" that section 227(d) requires for "senders of facsimile messages" and "the notice requirement [in section 227(b)(2)] for senders of unsolicited facsimile advertisements."[30]  What it did *not* do, however, was "make explicit that the Commission contemplated an opt-out requirement on fax ads sent with the prior express permission of the recipient."[31]  It accordingly made no attempt to justify such a requirement nor to even hint that one was on the table.[32]

The Commission's explanation when it actually adopted the rule wasn't any better.  In full, it stated:  "In addition, entities that send facsimile advertisements to consumers from whom they obtained permission, must include on the advertisements their opt-out notice and contact information to allow consumers to stop unwanted faxes in the future."[33]  Missing from that *ipse dixit* was any explanation of the statutory basis of the rule or its policy rationale.  Indeed, the only citation justifying the Commission's action came in a rote recitation of 11 separate sections of the Communications Act.[34]

What is worse, that same Commission order expressly countermanded the decision to apply the detailed opt-out notice and private right of action to solicited faxes.  *First*, the *Junk Fax Order* stated that "the opt-out notice requirement only applies to communications that constitute *unsolicited*

---

[28] *Whitman v. American Trucking Associations*, 531 U.S. 457, 468 (2001).

[29] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Protection Act*, CG Docket Nos. 02-278 and 05-338, Notice of Proposed Rulemaking, 20 FCC Rcd 19758, 19768, para. 20 (2005) (*Junk Fax Notice*).

[30] *Id.* at 19768–69, para. 21.

[31] *Anda Order* at para. 25.

[32] Although the *Anda Order* contains substantial legalese on this point, it does not once attempt to pin down how the Commission provided adequate notice.  And it cannot.  In full, here is the Notice's discussion of the phrase "prior express invitation or permission," the supposed basis for the rule:  "[W]e seek comment on the phrase 'prior express invitation or permission' in the definition.  In addition to written permission, what other forms of permission should be allowed by our rules?  If permission is given orally, for instance, should the facsimile sender bear the burden of proof to demonstrate that it had the consumer's prior express invitation or permission?"  *Junk Fax Notice*, 20 FCC Rcd at 19772, para. 30.

[33] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Junk Fax Prevention Act of 2005*, CG Docket Nos. 02-278, 05-338, Report and Order and Third Order on Reconsideration, 21 FCC Rcd 3787, 3812, para. 48 (2006).

[34] *Id.* at 3817, para. 64 (citing sections 1, 2, 3, 4, 201, 202, 217, 227, 258, 303, and 332 of the Communications Act).

22

advertisements."[35]  *Next*, the *Junk Fax Order* recognized that the TCPA's private right of action only reaches "any violation of the TCPA's prohibitions on . . . unsolicited facsimile advertisements."[36]

Perhaps that's why the rule has caused countless controversies in the courts.  Perhaps that's why the Commission feels it necessary to retroactively justify the rule today.  Perhaps that's why two dozen companies—and counting—have petitioned the Commission for relief.  We know that's part of the reason why every member of the Commission agrees that strict enforcement of the rule would contravene the public interest in these circumstances.

And yet, the Commission nevertheless claims that these circumstances "present no controversy to terminate or uncertainty to remove."[37]  Given our forthright acknowledgement that the rule should be waived because of how it was adopted, I do not see how there can be no controversy regarding its adoption.  And because our refusal to recognize the controversy that is staring us in the face is nothing more than a litigation strategy, I cannot support it.

Nor can I support the Commission's other attempts to evade judicial review.  Anda's petition cannot be time-barred,[38] for example, because our rules do not set a limit on when parties may file petitions for declaratory ruling.  Although Anda could have filed a petition for reconsideration, it chose instead to ask which of the 11 statutory provisions identified in the *Junk Fax Order* was the actual statutory basis of the rule.  That's not a question of reconsideration; it's instead a classic question of clarification.

The argument that Anda could seek judicial review if it had only filed a petition for rulemaking instead rings hollow given that Anda's compatriots have filed such petitions and the Commission denies them here.[39]  The same goes for the Commission's claim that Anda can always seek review if the Commission tries to enforce the rule against it.[40]  After all, the Commission was pivotal in ensuring that the Eighth Circuit would not review the rule when a private litigant sought to enforce it, and now the Commission waives the rule—but only long enough to try to foreclose review while holding out the threat of future enforcement.  Due process demands more:  If a party must comply with a rule, it must also have *some* recourse to determine that law's validity.

Ironically, the Commission now nitpicks the processes Anda used while ignoring the FCC's troubling process in this same matter.  After all, Anda filed its petition for declaratory ruling four years ago, and it is getting a judicially reviewable answer only now.  What is normally a matter of course— issuing a public notice to seek comment on a petition—was denied to Anda for more than three years.  And the FCC received Anda's original petition in November 2010 but waited almost a year to post it online and make it available to the public.  These are not the actions of an agency with clean hands, and we should not sully Anda just to make ourselves look better.

For all these reasons, I concur in part and dissent in part.

---

[35] *See Junk Fax Order*, 21 FCC Rcd at 3810, n.154 (emphasis added).

[36] *Id.* at 3815, para. 56.

[37] *Anda Order* at para. 18.

[38] *See id.* at paras. 16–17.

[39] *See id.* at para. 17 ("Anda would have had the opportunity to request judicial review if the Commission had denied its petition for rulemaking . . . of the *Junk Fax Order* . . . ."); *see id.* at paras. 32, 35 (denying several petitions for rulemaking).

[40] *Id.* at para. 17 ("Anda would have had the opportunity . . . to challenge the Commission's authority to adopt the rule if the Commission sought to enforce the rule against it.").

Federal Communications Commission                    FCC 14-164

# STATEMENT OF
## COMMISSIONER MICHAEL O'RIELLY
### CONCURRING IN PART AND DISSENTING IN PART

Re:     *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG
        Docket No. 02-278; *Junk Fax Prevention Action of 2005*, CG Docket No. 05-338; *Application for
        Review filed by Anda, Inc.*; *Petitions for Declaratory Ruling, Waiver, and/or Rulemaking
        Regarding the Commission's Opt-Out Requirement for Faxes Sent with the Recipient's Prior
        Express Permission.*

        While I concur with the relief provided today, I must dissent from the decision that the
Commission has statutory authority to require opt-out notices on fax advertisements sent at a recipient's
request (i.e, solicited faxes).  In reality, the item before us addresses a technology that is waning in use
but still can be important in certain segments of the economy.

        In 2006, the Commission adopted a rule requiring fax senders to include opt-out notices on their
fax advertisements, even if the recipients consented to receive fax ads from the senders.  While some have
argued that the rule is a good policy that benefits consumers, it suffers from a fundamental flaw:  the FCC
lacked authority to adopt it.

        Section 227(b)(1)(C) prohibits the sending of *unsolicited* fax advertisements—ads that are sent
"without … prior express invitation or permission, in writing or otherwise"—except in the context of an
established business relationship and subject to certain other requirements, including that such unsolicited
ads contain an opt-out notice.[1]  Thus, on its face, the provision and the related opt-out notice requirement
do not apply to *solicited* fax advertisements:  ads that are sent *with* prior express invitation or permission.[2]

        The order attempts to shoehorn solicited fax ads into the statute by claiming:  that the FCC
needed to define the scope of prior express permission; that such permission lasts only until it is revoked;
and that there must be a means to revoke it.  A hop, a skip, and a jump later, we have an opt-out
requirement on solicited faxes.  The order notes that an agency is entitled to fill gaps in a statute.  But it is
not entitled to invent gaps in order to fill them with the agency's own policy goals, no matter how well
intentioned.[3]

        If Congress was concerned that consumers that had consented to receive fax ads might change
their minds, it could have provided for that in the statute, but it chose not to do so.  In fact, I distinctly
remember working on this issue while it was being debated in Congress.  I raised this precise issue with
staff of the sponsor of the Senate bill and the answer was that a future Congress would need to address it,
if it chose to do so.  The FCC should respect that reality and not substitute its own policy judgment.
Tellingly, section 227(b)(2)(E)(iii) contemplates that someone that made a request not to receive any
more unsolicited faxes might later give consent to receive them.  The fact that Congress provided for a
change of heart in that situation but did not address the opposite case helps confirm that Congress did not
intend the statute to cover that case.

        In addition, even if the Commission had authority to adopt such a requirement, it is impermissibly
broad because it captures one-time faxes sent with the recipient's express permission.  In those instances,
it should be clear that the fax is not an unsolicited advertisement because the recipient consented to

---

[1] 47 U.S.C. § 227(b)(1)(C); 47 U.S.C. § 227(a)(5) (defining an "unsolicited advertisement").

[2] *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (quoting *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 254 (1992) ("In answering this question, we begin with the understanding that Congress "says in a statute what it means and means in a statute what it says there."); *see also Caminetti v. United States*, 242 U.S. 470, 485 (1917) (citing *Hamilton v. Rathbone*, 175 U. S. 414, 421 (1899)).

[3] *Contreras-Bocanegra v. Holder*, 678 F.3d 811, 818 (10th Cir. 2012) (quoting *Pruidze v. Holder*, 632 F.3d 234, 240 (6th Cir. 2011)) ("Chevron empowers agencies to 'fill statutory gaps, not to create them, and in this instance Congress left no gap to fill.'").

receive that very fax. Yet a sender could be subject to real liability if it does not include an opt-out notice. Indeed, this happened in the case of *Nack v. Walburg*.[4] Plaintiff Michael Nack filed a complaint against Defendant Douglas Walburg based upon the receipt of one fax advertisement that did not contain opt-out language. It was undisputed that Nack's agent consented to receive the sole fax in question. And the court even noted that the FCC's authority to impose an opt-out notice on solicited faxes was "questionable." But because the court determined it was barred under the Hobbs Act from entertaining a challenge to the requirement itself, it reluctantly "place[d] the parties back before the district court where Walburg faces a class-action complaint seeking millions of dollars even though there is no allegation that he sent a fax to any recipient without the recipient's prior express consent."

The order also notes that a commenter suggested that the Commission may require opt-out notices on solicited faxes as part of its authority to implement the statute's prohibition on *future* unsolicited advertisements. While the order does not explicitly rely on this argument, it is worth noting that it is also unpersuasive.

The "future unsolicited advertisements" language must be read in the context of the entire provision, which deals exclusively and unambiguously with unsolicited fax ads. That is, section 227(b)(1)(C) contemplates that a person that had received unsolicited fax ads in the past pursuant to an established business relationship may want to stop receiving unsolicited fax ads in the future. So section 227(b)(1)(C)(iii) makes clear that if the person makes a request not to send any more faxes, the sender can no longer rely on the established business relationship exception and will be prohibited from sending future unsolicited advertisements to that person.

This reading is reinforced by language in section 227(b)(2)(E), which details the requirements for the request not to send future unsolicited ads. One of the requirements is that it must be "made to the telephone or facsimile number of the sender of such an unsolicited advertisement". Thus, the future unsolicited ads prohibition applies to senders of prior unsolicited ads – not to senders of prior solicited ads.

Moreover, because the mechanism for making a request not to send future unsolicited ads is perfectly clear, there is nothing further for the Commission to interpret or implement to effectuate that prohibition. There is no ambiguity for the Commission to resolve. And as the Supreme Court recently stated, "[a]n agency has no power to 'tailor' legislation to bureaucratic policy goals by rewriting unambiguous statutory terms."[5]

Although I do not agree that the Commission has authority to impose an opt-out requirement on solicited faxes, I am sympathetic to petitioners that were confused about the Commission's enforcement of an unclear rule. To provide relief to these petitioners, I concur with the decision to grant each petitioner a retroactive waiver of the rule and to provide waiver recipients with a six month window to come into compliance with this requirement. I likewise concur with the Commission's willingness to consider granting relief to other similarly situated parties. At my request, staff has committed to engage in significant outreach to ensure that fax senders, including those that might not normally follow FCC proceedings, will be aware of the opt-out requirement. This outreach will be critical because, now that the Commission has reaffirmed its rule, companies (including small businesses and offices) that do not include opt-out notices on all of their faxes may find themselves subject to costly litigation.

I appreciate the Chairman's staff and the Bureau staff for working with my staff to make the best of a bad situation.

---

[4] *Nack v. Walburg*, 715 F.3d 680 (8th Cir. 2013).

[5] *Utility Air Regulatory Group v. Environmental Protection Agency*, 134 S.Ct. 2427, 2445 (2014).

**<u>Exhibit B</u>**

**Before the**
**FEDERAL COMMUNICATIONS COMMISSION**
**Washington, D.C. 20554**

| | |
|---|---|
| In the Matter of )<br>Petition of Medversant Technologies, LLC for Retroactive )<br>Waiver of 47 C.F.R. § 64.1200(a)(4)(iv) )<br>)<br>) | CG Docket No. 02-278<br><br>CG Docket No. 05-338 |

## PETITION FOR WAIVER

Medversant Technologies, LLC ("Medversant"), through counsel, hereby requests waiver of Section 64.1200(a)(4)(iv) of the Commission's rules, 47 C.F.R. § 64.1200(a)(4)(iv), with respect to any faxes sent by it prior to April 30, 2015, without the opt-out notices required by that rule to recipients that had provided prior express invitation or permission. The Commission recently granted a number of such waivers and invited similarly situated parties to file requests for the same relief.[1] Medversant is a similarly situated party, and good cause exists for providing it a waiver.

**Background**

The Telephone Consumer Protection Act (TCPA) prohibits the use of a fax machine to send an "*unsolicited* advertisement."[2] Specifically, in 2005, Congress enacted the Junk Fax Prevention Act as an amendment to the TCPA to "require[] the sender of an *unsolicited* fax advertisement to provide specified notice and contact information on the fax that allows recipients to 'opt out' of any future fax transmissions from the sender."[3] The Commission subsequently issued a rule providing that a fax advertisement "sent to a recipient that has provided prior express invitation or permission to the sender must include an opt-out notice."

---

[1] *Petition for Declaratory Ruling, Waiver, and/or Rulemaking Regarding the Commission's Opt-Out Requirement for Faxes Sent with the Recipient's Prior Express Permission*, CG Docket No. 02-278, 05-338, Order, FCC 14-164, ¶¶ 22-31 (rel. Oct. 30, 2014) ("*Fax Order*").

[2] 47 U.S.C. § 227(b)(1)(C) (emphasis added).

[3] *Fax Order* ¶ 5 (emphasis added).

1

However, when issuing that rule, the Commission stated that "the opt-out notice requirement only applies to communications that constitute *unsolicited* advertisements."[4]

Medversant—a leader in technology solutions for the management of healthcare provider data—provides credentialing services, and also offers communication compliance solutions to help healthcare providers meet their information security obligations under the Health Information Portability and Accountability Act.  As part of its core credentialing business, Medversant communicates and exchanges valuable information directly with healthcare providers, including by facsimile.  Medversant did not believe that these solicited facsimiles required opt-out notices.  Medversant is not in the advertising industry and is not in the business of sending bulk faxes or junk faxes.  Nonetheless, Medversant is currently defending itself against at least one, and possibly two, putative class actions in which the plaintiffs contend that the lack of opt-out notices on solicited facsimiles violated the TCPA and seek statutory damages.[5]

In its recently issued *Fax Order*, the Commission stated that its rules require that "senders of fax ads. . . include certain information on the fax that will allow consumers to opt out, even if they previously agreed to receive fax ads from such senders."[6]  However, the Commission "recognize[d] that some parties who have sent fax ads with the recipient's prior express permission may have reasonably been uncertain about whether [the Commission's] requirement[s] for opt-out notices applied to them."[7]  The Commission accordingly "grant[ed] retroactive waivers of [its] opt-out requirement to certain fax advertisement senders to provide

---

[4] *Fax Order* ¶ 24 (quoting *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Junk Fax Prevention Act of 2005*, CG Docket Nos. 02-278, 05-338, Report and Order and Third Order on Reconsideration, 21 FCC Rcd 3787, 3810 n.154 (2006) ("*Junk Fax Order*")) (emphasis in original).

[5] *Edward Simon, DC v. Healthways, Inc., et al.*, No. 2:14-08022 BRO (JCx) (C.D. Cal., filed September 16, 2014); *Affiliated Health Care Associates, P.C. v. Medversant Technologies, LLC, et al.* No. 1:14-10247 (N.D. Ill., filed December 22, 2014).

[6] *Fax Order* ¶ 1.

[7] *Id.*

2

these parties with temporary relief from any past obligation to provide the opt-out notice to such recipients required by [its] rules."[8]  The Commission invited "[o]ther, similarly situated entities [to] request retroactive waivers from the Commission, as well."[9]

### Medversant Should Be Granted A Waiver

Medversant respectfully requests that the Commission grant it the same waiver that the Commission granted to the parties in the *Fax Order*. As the Commission has explained, it may grant a waiver where "(1) special circumstances warrant a deviation from the general rule and (2) the waiver would better serve the public interest than would application of the rule."[10]  Medversant is entitled to a waiver under this standard, for the same reasons the parties granted waivers in the *Fax Order* received them.

First, there are "special circumstances" that "warrant deviation from the general rule" here, in that there are "two grounds that . . . led to confusion among affected parties (or misplaced confidence that the opt-out notice rule did not apply to fax ads sent with the prior express permission of the recipient)."[11]  Specifically, the Commission noted that its order accompanying the opt-out notice regulation stated that "the opt-out notice requirement only applies to communications that constitute *unsolicited* advertisements" and that the notice of proposed rulemaking issued in advance of that regulation "did not make explicit that the Commission contemplated an opt-out requirement on fax ads sent with the prior express

---

[8] *Id.*

[9] *Id.* ¶ 22.

[10] *Id.* ¶ 23; *see* 47 C.F.R. § 1.3; *see also, e.g., In the Matter of Coalition of E-Reader Manufacturers' Petition for Class Waiver of Sections 716 and 717 of the Communications Act and Part 14 of the Commission's Rules Requiring Access to Advanced Communications Services (ACS) and Equipment by People with Disabilities*, Order, CG Docket No. 10-213, DA 14-95 (rel. Jan. 28, 2014) (granting a waiver from the Commission's advanced communications services accessibility rules to a class of e-readers for a limited period of time where it would not be contrary to the public interest); *In the Matter of Cargo Airline Association Petition for Expedited Declaratory Ruling*, Order, CG Docket No. 02-278, FCC 14-32 (rel. March 27, 2014) (finding good cause to waive the requirements contained in Section 64.1200(a)(1)(iii) of the TCPA for package delivery companies to alert consumers about their packages).

[11] *Fax Order* ¶ 24.

3

permission of the recipient."[12]  Those same circumstances are present with respect to Medversant. Like others who have participated in this proceeding, Medversant questions the Commission's authority to read the language of 47 U.S.C. § 227(b) to require opt out language for *solicited* faxes, and Medversant certainly did not "[understand] that [it] did, in fact, have to comply with the opt-out notice requirement for fax ads sent with prior express permission but nonetheless failed to do so."[13]

Second, granting Medversant "a retroactive waiver would serve the public interest."[14]  In the *Fax Order*, the Commission found this requirement satisfied because "a failure to comply with the rule – which . . . could be the result of reasonable confusion or misplaced confidence – could subject parties to potentially substantial damages."[15]  The same is true here. Medversant is a defendant in putative class litigation in which the plaintiffs seek substantial statutory penalties.[16]

In sum, Medversant's circumstances are substantially identical in all material respects to the many other companies that have already received retroactive waivers.  The same waiver is thus warranted here.[17]  For all the reasons identified herein, Medversant respectfully requests that the Commission grant it a retroactive waiver of Section 64.1200(a)(4)(iv) of the Commission's rules insofar as it may have sent or may send fax advertisements prior to April 30, 2015 without the opt-out notices required by that rule to recipients that had provided prior express invitation or

---

[12] *Id.* ¶¶ 24-25 (quoting *Junk Fax Order*, 21 FCC Rcd at 3810 n.154).

[13] *Fax Order* ¶ 26.

[14] *Id.* ¶ 27.

[15] *Id.*

[16] *See* n. 5, *supra*.

[17] *See Fax Order* at ¶ 22 and nn.4 & 81.

4

permission.

Respectfully submitted,

/s/ Tanya L. Forsheit
Baker & Hostetler LLP
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
(310) 820.8800 (phone)
tforsheit@bakerlaw.com

Counsel for Medversant Technologies, LLC

Dated: January 7, 2015

5

## DECLARATION OF MATTHEW HADDAD

I have reviewed the foregoing Petition for Waiver, and I hereby declare under penalty of perjury

that the facts stated therein are true and correct to the best of my knowledge and belief.

**Title: Chief Executive Officer**
**Date: December 31, 2014**

605554781.3